MABEL ROBINSON AND CHARLES ROBINSON, PLAIN-
TIFFS-APPELLANTS, v. TOWNSHIP OF OCEAN, A MU-
NICIPAL CORPORATION, DEFENDANT-RESPONDENT.

Submitted May 16, 1939—Decided November 29, 1939.

For the appellants, *Quinn & Doremus* (*John J. Quinn,* of counsel).

For the respondent, *Henry H. Patterson* (*Haydn Proctor,* of counsel).

The opinion of the court was delivered by

RAFFERTY, J. This is an appeal from a judgment of non-suit entered in the Supreme Court, Monmouth County Circuit.

In 1932, respondent municipality, to remedy a drainage condition, constructed a bituminous concrete gutter at the

intersection of Lake View avenue and Colonial avenue in that municipality. Lake View avenue runs from east to west and Colonial avenue runs from north to south. The gutter runs with Colonial avenue on its westerly side and from either curb of Lake View avenue. These roadways are of gravel construction with concrete curb and gutter constructed along the sides thereof. A street lamp is erected on the southwest corner of the intersection. The bituminous concrete gutter when constructed appears to have been between eleven and twelve feet wide; to have been concave in design and at its greatest depth was approximately fourteen inches from the level of the roadway. The concrete bed of the gutter extended to within six and one-half inches of the top of the construction, the remainder thereof to the roadbed proper being of gravel or dirt. A similar gutter exists at another street intersection of the township and here there are certain traffic warning signals. It is not shown that these signals were erected because of the presence of the gutter. It is shown also by the testimony of appellant Charles Robinson that similar gutters exist in other townships of the county. Prior to the construction of this gutter a wooden box culvert had existed in about the same location and upon the wooden culvert falling out of repair the municipality constructed the new gutter.

On October 23d, 1935, at about eleven-thirty P. M., appellant was operating his automobile along Lake View avenue in an easterly direction and upon approaching the intersection reduced the speed of the automobile to approximately fifteen miles per hour. Mr. Robinson observed the presence of the gutter but testified that he was not aware of its depth and that he drove into it, causing a severe impact to the automobile, as a result of which he and his wife, who was a passenger in the car, suffered personal injury. Mr. Robinson testified that although he was an official of the municipality in 1935 and that he lived approximately one mile from the intersection in question, he was not aware of the existence of this concrete gutter. He testified that prior to 1930, during certain test runs of the local fire department, he had ridden over the intersection at a speed of sixty miles per hour or more, at which time the roadway was level, but that he had

o

not crossed the intersection more than four times between 1930 and 1935. The last time he had crossed the intersection was between six months to a year prior to the date of the accident. Mr. Robinson testified that the depth of the gutter was "practically the same" across the intersection. Another witness for plaintiff testified that it was "a very even recession."

The trial of the issue proceeded upon the theory of an active wrongdoing on the part of the municipality. At the close of plaintiffs' case a motion for nonsuit was made on the grounds that (1) plaintiffs failed in their proof of active wrongdoing on the part of the municipality, and (2) that plaintiffs were guilty of contributory negligence. The trial court held that sufficient proof of active wrongdoing had been produced, but nonsuited on the ground of contributory negligence. We agree with the result reached by the trial court, but are of the opinion that the nonsuit should have been based upon the failure of plaintiffs to prove active wrongdoing on the part of the municipality. In *Allas* v. *Rumson,* 115 *N. J. L.* 593, Mr. Justice Heher, speaking for this court, reviewed this general subject in a comprehensive manner and there pointed out, citing authorities, that, "There is some confusion in the adjudicated cases as to what constitutes active wrongdoing by a municipality, and the line of demarcation is not always clearly maintained. The difficulty usually lies in the application, of the principle to the facts of the particular case. The true distinction seems to be whether the private injury has resulted from a wrongful act or positive misfeasance, as distinguished from mere negligence. A private action must rest upon some positive, affirmative act, 'wrongful in itself, and detrimental to the plaintiff.' "

Applying the test thus laid down we must conclude that plaintiffs failed in their proof that the municipality was guilty of positive misfeasance. "Misfeasance * * * has been defined as the wrongful and injurious exercise of lawful authority, or the doing of a lawful act in an unlawful manner * * *." *Allas* v. *Rumson, supra* (at *p.* 596). The mere proof of the happening of an accident and of injury to plaintiff does not meet the requirements of the rule. In

addition there must be proof of wrongdoing imputable to the municipality, as the wrongful construction of the gutter rendering its use dangerous and likely to cause harm to persons exercising reasonable care, or, as in *Allas* v. *Rumson, supra,* the failure to install protective or warning devices about the construction. Other illustrations of application of the rule are treated in the Rumson case, *supra.*

Giving to the proofs in the instant case every proper inference and considering the matter in a light most favorable to plaintiffs, we find no proof of improper design or construction of the gutter or arrangement thereof making it dangerous to travel or use. The dimensional facts testified to do not alone suggest this result. Indeed, plaintiffs' proofs show the existence of similar gutters in other neighboring municipalities and that the slope of this gutter was gradual and was "a very even recession" from the roadway. It is the common experience that secondary roads, particularly, throughout the rural and residential areas are drained of surface water with substantially similar arrangement. It was incumbent upon plaintiffs to show by competent proof that the particular construction was condemnable within the law of the case.

There was proof of the existence of appropriate lighting facilities at the intersection.

We find no proof to sustain the charge of active wrongdoing against the municipality and on that ground affirm the judgment of nonsuit appealed from.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, BODINE, DONGES, PORTER, DEAR, WELLS, RAFFERTY, JJ.   10.

*For reversal*—HEHER, PERSKIE, HETFIELD, WOLFSKEIL, HAGUE, JJ.   5.