151 So.2d 682 (1963)
John W. HOWARD, Appellant,
v.
AMERICAN SERVICE MUTUAL INSURANCE COMPANY, Appellee.
No. 62-473.
District Court of Appeal of Florida. Third District.
April 2, 1963.
Rehearing Denied April 23, 1963.
*683 Gay & Anderson, Miami, for appellant.
Papy & Carruthers and Lee E. Weissenborn, Miami, for appellee.
Before CARROLL, HORTON and HENDRY, JJ.
HENDRY, Judge.
In a prior suit the appellant, Howard, recovered judgments against one Leonard R. Bajnick, a/k/a Bujnicki, the owner of an automobile, and its driver, Richard L. Kellar. The judgments were for injuries sustained by appellant as a result of a collision between appellant's automobile and the automobile owned by Bajnick and operated by Kellar. The judgments being unsatisfied, plaintiff brought this action against the defendant, American Service Mutual, to recover on an automobile liability policy which the defendant had issued to Bajnick, prior to the accident. The trial judge granted a summary final judgment in favor of the defendant upon his finding, as a matter of law, that the policy in question did not cover Bajnick for an accident occurring while the vehicle was being driven by someone other than his immediate family, which Kellar was not. While the policy contained a clause[1] stating in part that it "shall comply with the financial responsibility law of any state or province which shall be applicable", the trial judge determined that the financial responsibility law of Florida was not applicable until after the insured became involved in his first accident and, therefore, such clause in the policy did not extend coverage to include *684 this accident.[2] Plaintiff appeals from the summary final judgment.
It is clear that the policy in question did not cover Bajnick while his vehicle was being driven by Kellar unless, under "Condition 4", our financial responsibility law is applicable and has the effect of broadening the coverage of the policy so as to include liability to the plaintiff from this accident. We so hold.
Basically, § 324.051(2), Fla. Stat., F.S.A., provides for the suspension of operators' licenses and all registrations of the owners of vehicles involved in an automobile accident which has resulted in bodily injury or death to any person or total damage to property of $50.00 or more, unless, among other things, certain security is deposited with the State Treasurer or a release is obtained from all injured parties and there is compliance with § 324.031, Fla. Stat., F.S.A.[3]
Further, § 324.121, Fla. Stat., F.S.A. provides for suspension of license and registration if a person fails to satisfy a judgment unless written consent from the judgment creditor is obtained and proof of financial responsibility is furnished according to § 324.031, supra.
Thus, one of the methods of avoiding suspension of an operator's license and the registration of an owner of a vehicle as a result of an accident or failure to satisfy a judgment is by furnishing proof of financial responsibility, as defined in § 324.031, supra. A "motor vehicle liability policy", in order to constitute proof of financial responsibility, must conform to §§ 324.021(7), 324.021(8) and 324.151(1), Fla. Stat., F.S.A. The last three mentioned sections set forth the amounts of coverage required and the extent of such coverage. As to an owner's liability insurance policy, the coverage must insure the owner named therein and any other person as operator using such vehicle with the express or implied consent of such owner, against loss from the liability imposed by law for damage arising out of the ownership, maintenance or use of such vehicle.
If we stopped here, the questions before us would be: (1) whether our financial responsibility law became applicable within the meaning of "Condition 4" by virtue of the fact that a "motor vehicle liability policy" will prevent suspension of the insured's license and registration; (2) if so, and the defendant's policy coverage, by its own terms, became extended so as to prevent such suspension, does this broadened coverage apply at the time of the accident so as to cover this liability?
*685 These questions would cause us much difficulty if it were not for the fact that § 324.051, Fla. Stat., F.S.A. also provides that its suspension provision is not even applicable if the owner had in effect at the time of such accident an "automobile liability policy" with respect to the motor vehicle involved in such accident. If an "automobile liability policy" must meet the same standards as a "motor vehicle liability policy", then such full coverage must be in effect at the time of the accident in order to preclude the application of such suspension provision. Accordingly, "Condition 4" of the policy would make said policy comply with certain requirements which become effective before an accident occurs. This is our holding.
In Iszczukiewicz v. Universal Underwriters Inc. Co., 182 F. Supp. 733 (N.D.O. 1960), aff'd, 290 F.2d 590 (6th Cir.1961) the district court was faced with an almost identical question involving the Ohio Motor Vehicle Financial Responsibility Act. The court found that the intent of the legislature was that the definition of "owner's policy of liability insurance" [this term is defined by the Ohio Act to include the same coverage as required by § 324.151(1) of our statute, and, as in our statute, was required under the definition of a "motor vehicle liability policy"] should be applied to the term "automobile liability insurance". The court pointed out that if it were otherwise, the insured could obtain a policy which would exempt him from the security and suspension provisions and yet failed to cover the particular accident. In other words, a contrary interpretation would defeat the purpose of the Act to recompense the public for injury to person or property caused by the operation of a motor vehicle. Any automobile liability policy, no matter how limited the coverage, taken out prior to the insured's first accident, would preclude the insured from ever having to obtain the type of coverage required as proof of financial responsibility.
The court concluded on page 737, as follows:
"It is therefore my considered judgment that it is necessary to provide an `owner's policy of liability insurance' to comply with the provisions of the Ohio Motor Vehicle Financial Responsibility Act with respect to exemption of the owner or operator from the security deposit requirement of § 4509.12; that if an insurance policy is endorsed to comply with such Act reasonable provisions may be read into the policy so that it will provide such compliance; that a provision for insurance coverage of any person using, * * * with the express or implied permission of the insured, a motor vehicle owned by an automobile dealer for resale is a reasonable provision to be read into this policy under Condition 7 of the policy; and that the operator of the motor vehicle here involved, Arvo Johnson, was using the vehicle with the express permission of the named insured. I therefore conclude that Universal Underwriters Insurance Company is liable for the acts of Aryo Johnson, as described herein, as if he were the insured under Policy No. GL 20196 of that Company."
In Standard Acc. Ins. Co. v. Allstate Ins. Co., 72 N.J. Super. 402, 178 A.2d 358 (N.J. Super.Ct. 1962), the Superior Court of New Jersey reached a similar result where a policy contained a MATO endorsement ("More automobiles than operators") which purported to limit the coverage where the automobile was being operated by anyone except the named insured and others of a limited group. The court said at page 364 of 178 A.2d:
"Equally, if not more important, is the fact that if the MATO endorsement were given any validity, it would run completely counter to the legislative policy evident in the present Motor Vehicle Security-Responsibility Law. *686 Today the statutory omnibus clause is only required to be included in a policy `furnished as proof of financial responsibility.' N.J.S.A. 39:6-46. As noted, the security section of N.J.S.A. 39:6-25 is not applicable if there is in effect `an automobile liability policy with respect to the motor vehicle involved in such accident.' Although there is no explicit statutory requirement that such a policy, in order to relieve the insured from the security provision, must conform to the requirement of N.J.S.A. 39:6-46 to 48, it would be anomalous to say that the statute does not require such insurance to conform to the coverage specified in N.J.S.A. 39:6-46  i.e., coverage which insures not only the named insured but `any other person using or responsible for the use of any such motor vehicle with the express or implied consent of the insured.' If this were not so, an owner, by taking out a policy covering the automobile only when he was driving, could avoid the impact of the Security-Responsibility Law. * * * Remedial legislation should not be so interpreted."
We must assume that "Condition 4" was inserted in the policy for a purpose. To interpret such clause as becoming effective only after an accident has occurred would make the clause meaningless. After an accident has occurred this type of clause is not needed to render an insurer liable because full coverage would be required in order to provide proof of financial responsibility. Where the terms of an insurance policy are susceptible to two interpretations, that interpretation which sustains the claim for indemnity will be adopted. Poole v. Travelers Ins. Co., 130 Fla. 806, 179 So. 138. Any ambiguity or uncertainty in an insurance policy must be resolved against the insurer. Continental Cas. Co. v. Phoenix Const. Co., 46 Cal.2d 423, 296 P.2d 801, 57 A.L.R.2d 914 (1956).
Further, it has been declared that legislative acts, remedial in nature, and in the public interest, must be liberally construed to the end of fostering its objectives. See Continental Cas. Co. v. Phoenix Const. Co., supra.
This is a case of first impression in our State. While the defendant has ably presented its argument to the contrary and has referred us to many cases in which a contrary result was reached, we chose to follow this path which we find to be more sound and logical.
Accordingly, the summary final judgment appealed is reversed and the cause is remanded for the entry of a summary final judgment in favor of the plaintiff.
Reversed and remanded.
NOTES
[1] "Condition 4" reads as follows:

"Financial Responsibility Laws  Coverages A and B. Such insurance as is afforded by this policy for bodily injury liability or property damage liability shall comply with the provisions of the motor vehicle financial responsibility law of any state or province which shall be applicable with respect to any such liability arising out of the ownership, mainteance or use of the automobile during the policy period, to the extent of the coverage and limits of liability required by such law, but in no event in excess of the limits of liability stated in this policy. The insured agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph."
[2] The opinion of the trial judge reads, in part, as follows:

"The appellate courts of Florida have not yet interpreted a policy condition similar to Condition 4. However, the same question has arisen in numerous other jurisdictions under financial responsibility acts similar to that of Florida. The great majority of these courts hold that the condition is not a blanket adoption of all of the provisions of the financial responsibility statute, but only adopts the act `when applicable.' Since no one is required to carry any insurance whatsoever under such statutes until after having first become involved in an accident, the act is not `applicable' to a first accident, but only applies after the insured has had an accident and been brought within the terms of the act."
[3] Fla. Stat. 324.031 reads as follows:

"Manner of proving financial responsibility
"The operator or owner of a vehicle may prove his financial responsibility by:
"(1) Furnishing satisfactory evidence of holding a motor vehicle liability policy as defined in § 324.021(8) and § 324.151, or
"(2) Posting with the state treasurer of a satisfactory bond of a surety company authorized to do business in this state, conditioned for payment of the amount specified in § 324.021(7), or
"(3) Furnishing a certificate of the state treasurer showing a deposit of cash or securities in accordance with § 324.161, or
"(4) Furnishing a certificate of self-insurance issued by the commissioner in accordance with § 324.171."