Peter A. HART, Appellant,

v.

**NATIONAL INDEMNITY COMPANY,**
Appellee.

No. 722.

Supreme Court of Alaska.

Feb. 3, 1967.

———◆———

James K. Tallman, Anchorage, for appellant.

Robert C. Erwin, Hughes, Thorsness & Lowe, Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

RABINOWITZ, Justice.

The crux of this appeal involves interpretation of Alaska's Motor Vehicle Safety

Responsibility Act.[1] We affirm the superior court's judgment which granted both a summary judgment and declaratory judgment in appellee National's favor.

On September 18, 1964, appellant Peter Hart was injured when a car in which he was riding left Dowling Road, near Anchorage, and crashed. At the time of the accident the vehicle was being driven by David Harwood and was occupied by appellant Hart, Wayne Tollefsrud, and two other passengers. The automobile, which was involved in the accident, was owned by Gary P. Cook who, on the occasion of the accident, had given David Harwood permission to use the vehicle.

Prior to the accident Cook had, on June 3, 1964, obtained from appellee National Indemnity Company an automobile liability insurance policy on the vehicle which was involved in the accident. This policy was effective from June 3, 1964, until June 3, 1965, and contained a restrictive endorsement for "Military, Minor & Student Risks" which read in part as follows:

It is hereby understood and agreed that such coverage as is afforded hereunder is void and of no effect, except as respects the loss payee, while the automobile insured hereunder is operated by any person other than the named assured or members of the immediate family.

On February 23, 1965, appellant Hart instituted suit in the Superior Court, Third Judicial District, against Cook, Harwood, and Tollefsrud for the injuries he sustained in the September 18, 1964, accident. While appellant's action was pending, appellee National filed a complaint for declaratory judgment in the lower court naming appellant, Cook, Harwood, and Tollefsrud as defendants.[2] In its complaint National asserted that the insurance policy it had issued to Cook afforded "no coverage to the defendants * * * for the reason that the insured vehicle was being driven by a person other than the named insured or a member of the immediate family of the insured at the time of the accident." Appellee National requested the superior court to declare that its policy did not provide coverage to defendants with reference to appellant Hart's action against them, and that it be further declared that National "is no longer [required] * * * to provide or continue a defense in such action on behalf of Gary P. Cook, David M. Harwood and Wayne H. Tollefsrud or either of them in such case."

Appellant Hart then filed an answer in the declaratory judgment action and moved for summary judgment.[3] The basis of Hart's motion for summary judgment was that the "Military, Minor & Student Risks" endorsement contained in the policy, which National issued to Cook, was ineffective as a limitation to the policy's general coverage since the endorsement was made effective from June 3, 1965.[4]

1. AS 28.20.010–28.20.640. This act became law in 1959.

2. AS 22.10.020(b) provides:
   In case of an actual controversy within the state, the superior court, upon the filing of an appropriate pleading, may declare the rights and legal relations of an interested party seeking the declaration, whether or not further relief is or could be sought. The declaration has the force and effect of a final judgment or decree and is reviewable as such. Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against an adverse party whose rights have been determined by the judgment.

3. In his answer appellant alleged that the "Military, Minor & Student Risks" endorsement contained in the policy National issued to Cook "had no force and effect at the time of the accident herein involved, the named endorsement being effective by its own terms from June 3, 1965, the accident herein occurring on or about September 18, 1964, at which time the policy was in effect with no such endorsement."

4. Appellant argues that if the restrictive endorsement is of no force and effect, then the general liability provisions of

At the hearing held on appellant's motion for summary judgment, appellee National filed the original of the policy it had issued to Cook. The effective date of the restrictive endorsement for "Military, Minor & Student Risks," as it appears in the original policy, was shown as June 3, 1964.[5] On the face of the original policy it appears that it was cancelled on October 1, 1964.[6] In addition to filing the original policy, appellee filed the affidavits of Erna D. Vogt, its secretary, and Leo H. Cassidy, its superintendent of claims, in opposition to appellant's motion for summary judgment.

Erna Vogt's affidavit stated that the original policy "was delivered to Gary P. Cook and returned to our Company at the time of its cancellation * * *." Her affidavit further stated that:

> Attached to said policy, as issued, was an endorsement entitled 'Endorsement for Military, Minor and Student Risks', said endorsement being identified as NI 366. This endorsement was effective on June 3, 1964. A certified copy of the policy was prepared recently and, as a result of a typographical error, this endorsement was stated to be effective June 3, 1965.[7]

The hearing on appellant's motion for summary judgment was then continued for three weeks to enable appellant's counsel to check the purported original of the policy, which appellee had filed in opposition to the summary judgment motion. We note that no affidavit from Cook, or any other evidence, was produced showing that the purported original was not in fact the original of the policy which had been issued and delivered to Cook. At the expiration of the three-week continuance, appellant filed a supplemental memorandum in support of his motion for summary judgment.[8] In this memorandum appellant, for the first time, raised the contention that the "Military, Minor & Student Risks" endorsement was made unenforceable by the terms of our Motor Vehicle Safety Responsibility Act. Appellee National then filed a "crossmotion" for summary judgment. In granting appellee summary judgment in its favor, the superior court also declared that appellee's

> policy ACEE 324086 does not furnish insurance coverage to Gary P. Cook, David H. Harwood and Wayne H. Tollefsrud, with reference to the claims pending in

Cook's policy would provide coverage. "Coverage A" of Cook's policy provided that National agreed
> To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile.

5. The copy of National's policy, which was made part of its complaint in the declaratory judgment action, reads that the effective date of the restrictive endorsement was June 3, 1965. This same copy further indicated that the policy "Expired June 3, 1964." If effect were to be given to this latter date, then the policy would have expired well before the September 18, 1964, accident in question.

6. The term of the policy as it appears on the original is stated as "From June 3, 1964 to June 3, 1965."

7. Leo Cassidy's affidavit reads in part as follows:
> Attached to said policy as issued was an endorsement entitled 'Endorsement for Military, Minor & Student Risks', said endorsement being identified as NI 366. Through typographical error, the effective date of this endorsement attached to and a part of the original policy was stated to be effective from June 3, 1965, whereas it was intended to be effective on the same date as the inception date of this policy or June 3, 1964. Photocopy of copy of this endorsement as it appears in the files of National Indemnity Company is attached hereto and incorporated by reference.

Note: On the copy of the endorsement attached to Cassidy's affidavit the effective date is shown as June 3, 1964.

8. In this supplemental memorandum appellant reasserted his argument that the restrictive endorsement did not come into effect until June 3, 1965.

the Superior Court for the State of Alaska, Third Judicial District, cause no. 65–258A, and that plaintiff is no longer required to provide or continue any defense in such action on behalf of Gary P. Cook, David M. Harwood, or Wayne H. Tollefsrud.

On the basis of this record we affirm the trial judge's ruling that no genuine issue as to the effective date of the "Military, Minor & Student Risks" endorsement was raised.[9] Appellant offered no evidence to dispute the fact that the restrictive endorsement was effective as of June 3, 1964, nor was any evidence produced which contradicted the fact that the June 3, 1965, date which appeared on the copy filed with appellee's complaint was the result of a typographical error.[10]

This leads to the issue of whether the restrictive endorsement in question was prohibited by the provisions of our Motor Vehicle Safety Responsibility Act. In the act's declaration of purpose it is stated that:

> The legislature is concerned over the rising toll of motor vehicle accidents and the suffering and loss inflicted by them. The legislature determines that it is a matter of grave concern that motorists be financially responsible for their negligent acts so that innocent victims of motor vehicle accidents may be recompensed for the injury and financial loss inflicted upon them. The legislature finds and declares that the public interest can best be served by the requirements that the operator of a motor vehicle involved in an accident respond for damages and show proof of financial ability to respond for damages in future accidents as a prerequisite to his exercise of the privilege of operating a motor vehicle in the state.[11]

After providing for administration by the Department of Public Safety[12] the act

---

9. Civ.R. 56(c) states in part:
   Judgment shall be rendered forthwith if the pleadings, depositions and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.

10. On its facts this aspect of the case at bar is distinguishable from Wilson v. Pollet, Opinion No. 354, 416 P.2d 381, 383–384 (Alaska 1966), and Hartsfield v. Carolina Cas. Ins. Co., Opinion No. 328, 411 P.2d 396, 399–400 (Alaska 1966). In determining this facet of appellant's motion the trial judge wrote:
    Defendant's position is that the copy of the policy, including the typed copy of the restrictive endorsement attached to the complaint of National Indemnity, raises an issue. This contention is incorrect. Undoubtedly, the typographical mistake was misleading to defendant's counsel and he relied upon it heavily for he depended upon this point alone in the answer. However, this mistake has been explained by the subsequent affidavits of the 28th of June, 1965 of Erna D. Vogt and of 25th of June, 1965 of Leo Cassidy. According to both, a typographical error was made in reproducing the typed copy of the endorsement. According to both, the endorsement as it appeared on the original policy reveals that the restrictive endorsement was effective June 3, 1964, the effective date of the policy. Moreover, the endorsement clearly shows that it was countersigned with a stamp of Harold L. Bodenheimer, duly authorized representative of National Indemnity. So the mistake that was made has now been explained by the affidavits. The affidavits show that the original endorsement was effective June 3, 1964. Defendant has offered nothing to dispute these facts except to argue that the affidavits of June 25th and June 28th may not be believed or to interpret what is said in the affidavit of Cassidy in a rather illogical manner. Defendant assumes that it has been established clearly by the evidence that the restrictive endorsement was effective June 3, 1965; which incidentally is approximately eight months after the policy was cancelled according to the date of cancellation appearing on the face of the policy. Having assumed the validity of the policy on June 3, 1965, defendant's counsel argues that it may not now be modified under the parol evidence rule. The parol evidence rule is clearly not applicable.

11. AS 28.20.010.

12. AS 28.20.020–28.20.040; AS 28.20.630 (1).

deals with essentially two subjects, namely, the requirement of a deposit of security [13] and proof of financial responsibility for the future.[14]

The deposit of security provisions of the Motor Vehicle Safety Responsibility Act come into play when a

> vehicle subject to registration under the laws of this state * * * is involved in any manner in an accident in this state resulting in bodily injury to or death of a person or damage to the property of any one person exceeding $200.[15]

When such an accident occurs, the Department of Public Safety is required to "determine the amount of security it considers sufficient to satisfy any judgments for damages resulting from the accident which may be recovered against each driver or owner." [16] After this determination has been made, the department is required to

> give written notice to every person of the amount of security required to be deposited by him and stating that an order of suspension will be made upon the expiration of 10 days after the notice is sent unless within that time security is deposited as required.[17]

It is specifically provided that the requirements as to deposit of security and suspension are not applicable to:

> (1) the driver or owner if the owner had in effect at the time of the accident an automobile liability policy or bond with respect to the vehicle involved in the accident * * *.
>
> (2) the driver who is not the owner if there was in effect at the time of the accident an automobile liability policy or

bond with respect to his driving of vehicles not owned by him * * *.[18]

As to the type of automobile liability policy or bond which would enable a driver or owner to avoid the deposit of security requirements, the act requires that the policy or bond be issued by "an insurance company or surety company authorized to do business in this state" and that the policy on hand contain a

> limit, exclusive of interest and costs, of not less than $10,000 because of bodily injury to or death of one person in any one accident and, subject to the same limit for one person, to a limit of not less than $20,000 because of bodily injury to or death of two or more persons in any one accident * * *.[19]

Regarding the second major aspect of this act, it is provided that proof of financial responsibility for the future is required of

> persons who are convicted of or forfeit bail for certain offenses under motor vehicle laws or who, by ownership or operation of a vehicle of a type subject to registration under the motor vehicle laws of this state, are involved in an accident in this state which results in bodily injury or death of a person or damage to the property of any one person exceeding $200.[20]

The act defines "proof of financial responsibility for the future" as meaning

> proof of ability to respond in damages for liability, on account of an accident occurring after the effective date of proof, which arises out of the ownership, maintenance or use of a vehicle subject to registration under the laws of this state * * *. As used in this chapter the terms 'proof of financial responsibility'

---

13. AS 28.20.050–28.20.220.

14. AS 28.20.230–28.20.600.

15. AS 28.20.050(a).

16. AS 28.20.050(b).

17. AS 28.20.050(d).

18. AS 28.20.060(1), (2).

19. AS 28.20.070(a). In 1966 this section was amended, effective January 1, 1967, to increase policy limits to $15,000 and $30,000. SLA 1966, ch. 146, § 1.

20. AS 28.20.230(a).

or 'proof' mean proof of financial responsibility for the future.[21]

The act then provides for the suspension of the license of the operator of a motor vehicle involved in the accident unless the operator or owner

(1) has previously furnished or immediately furnishes security required by this chapter, or is excepted from furnishing security under § 60 [AS 28.20.060 (1), (2)] of this chapter, and

(2) maintains proof of financial responsibility for three years following the accident.[22]

The only other section of the Motor Vehicle Safety Responsibility Act that has any relevance to this appeal is AS 28.20.440. Subsection (a) of AS 28.20.440 defines "motor vehicle liability policy" as meaning

an 'owner policy' or an 'operator's policy' containing an agreement or endorsement as provided in this section, or certified as provided in § 410 * * * as proof of

financial responsibility for the future, and issued * * * by an insurance carrier authorized to transact business in this state, to or for the benefit of the person named as insured.[23]

Subsection (b) (2) of AS 28.20.440 requires that the owner's policy of liability insurance shall

insure the person named and every other person using the vehicle with the express or implied permission of the named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of the vehicle within the United States of America or the Dominion of Canada * * *.[24] AS 28.20.440(f) (1) provides that:

(f) Every motor vehicle liability policy is subject to the following provisions but these provisions need not be contained in the policy.

(1) The liability of the insurance carrier becomes absolute whenever injury

---

21. AS 28.20.230(b).

22. AS 28.20.260. See also AS 28.20.320 which provides:

Exceptions when insurer liable. No license or nonresident's operating privilege shall be suspended under this chapter if the department finds that an insurer is obligated to pay the judgment upon which suspension is based at least to the extent and for the amounts required in this chapter, but has not paid the judgment for any reason. A finding by the department that an insurer is obligated to pay a judgment is not binding upon the insurer and has no legal effect except for the purpose of administering this section. If in a judicial proceeding it is determined by a final judgment, decree or order that an insurer is not obligated to pay a judgment, the department, notwithstanding any contrary finding made by it, shall immediately suspend the license or nonresident's operating privilege of a person against whom the judgment is given, as provided in § 270 of this chapter.

23. AS 28.20.410 provides:

Certificate of insurance as proof. Proof of financial responsibility for the

future may be furnished by filing with the department the written certificate of an insurance carrier authorized to do business in this state certifying that there is in effect a motor vehicle liability policy for the benefit of the person required to furnish proof of financial responsibility. The certificate shall give the effective date of the motor vehicle liability policy, which shall be the same as the effective date of the certificate, and shall designate by description or appropriate reference all vehicles covered by it, unless the policy is issued to a person who is not the owner of a motor vehicle.

24. AS 28.20.440(b) (2) further required that the policy limits be

$10,000 because of bodily injury to or death of one person in any one accident and, subject to the same limit for one person, $20,000 because of bodily injury to or death of two or more persons in any one accident, and $5,000 because of injury to or destruction of property of others in any one accident. In 1966 this section was amended to increase the policy limits, effective January 1, 1967. See note 19 supra.

or damage covered by the policy occurs * * *.[25]

■ No law of Alaska requires a driver or owner to carry automobile liability insurance as a prerequisite to his owning or operating a motor vehicle in this state. It is clear from the foregoing sections of our Motor Vehicle Safety Responsibility Act that until a driver or owner has an accident a person can own and operate a motor vehicle without having first obtained liability insurance. It is only after an accident has occurred that the act's provisions pertaining to deposit of security and proof of financial responsibility for the future come into play.[26]

It is undisputed that the policy in question, which was issued by appellee National to Gary Cook, was not one that was either certified, or required, as proof of financial responsibility for the future. It was a voluntary policy issued by appellee National to one who, at the time of issuance, was under no obligation to make either a deposit of security or furnish proof of future financial responsibility under the provisions of

our Motor Vehicle Safety Responsibility Act.

■ More particularly, we construe the absolute liability provisions of AS 28.20.440 (f) (1) as being limited by AS 28.20.440(a), which provides that such absolute liability provisions are made part of only those motor vehicles liability policies which are certified or required as proof of financial responsibility for the future.[27]

■ Nor do we believe the fact that the liability policy in question contained a condition relating to financial responsibility laws automatically resulted in the incorporation of AS 28.20.440(f) (1)'s absolute liability provisions into the policy. Condition 9 of the policy provided in part as follows:

Financial Responsibility Laws—Coverages A and B: When this policy is certified as proof of financial responsibility for the future under the provisions of the motor vehicle financial responsibility law of any state or province, such insurance as is afforded by this policy for bodily injury liability or for property damage liability shall comply with the

---

25. See also AS 28.20.440(d) which reads:
The motor vehicle liability policy shall state the name and address of the named insured, the coverage, the premium charged, the policy period and the limits of liability, and shall contain an agreement or an endorsement that insurance is provided in accordance with the coverage defined in this chapter for bodily injury and death or property damage, or both, and is subject to all the provisions of this chapter.

26. In Hoosier Cas. Co. of Indianapolis, Ind. v. Fox, 102 F.Supp. 214, 229 (N.D. Iowa 1952), it was said:
The distinction between the security and proof sections is very important, and it is significant that the Legislature very carefully separated those two sections. In 33 Iowa Law Review 522, 527 (1948), it is stated: 'An appreciation of the distinction between security and proof of financial responsibility is basic to an understanding of the Iowa or similar acts. Security, i. e., the furnishing of collateral of one type or another to cover liability of the person secured for damages in the accident

which brought the law into play, is retrospective in operation. Proof of financial responsibility, * * * is prospective in operation and refers to evidence of ability to meet possible judgments arising out of the future ownership, maintenance, or operation of motor vehicles.'

27. National Sur. Corp. v. Diggs, 272 S.W. 2d 604, 610–612 (Tex.Civ.App.1954). Iszczukiewicz v. Universal Underwriters Ins. Co., 182 F.Supp. 733 (N.D. Ohio 1960), aff'd, 290 F.2d 590 (6th Cir. 1961) (Cecil, J., dissenting), Howard v. American Serv. Mut. Ins. Co., 151 So.2d 682, 8 A.L.R.3d 382 (Fla.App.1963), and Standard Acc. Ins. Co. v. Allstate Ins. Co., 72 N.J.Super. 402, 178 A.2d 358 (1962), are relied upon by appellant in this appeal. Judge Fitzgerald's decision in the lower court in the instant case thoroughly analyzed and distinguished these authorities. National Indem. Co. v. Hart (3d Dist.), Alaska L.J. Vol. 4, No. 4, p. 54, 56–58 (April 1966). We are in agreement with Judge Fitzgerald's analysis of these authorities.

provisions of such law which shall be applicable with respect to any such liability arising out of the ownership, maintenance or use of the automobile during the policy period, to the extent of the coverage and limits of liability required by such law, but in no event in excess of the limits of liability stated in this policy.

We interpret Condition 9 as limited to the instance where the policy "is certified as proof of financial responsibility for the future." In our view, Condition 9 does not constitute a contractual agreement that the policy was amended to include AS 28.-20.440(f) (1)'s absolute liability provision and thereby vitiating the restrictive endorsement in question.[28]

The majority of those jurisdictions which have had occasion to pass on similar issues have concluded that safety responsibility acts are applicable only to those policies which are required or certified under such acts. Typical of these authorities is Hoosier Cas. Co. of Indianapolis, Ind. v. Fox,[29] where it was stated in part:

> The kind of policy referred to in Sec. 321A.21(6) (a) is a 'motor-vehicle liability policy' which has been certified as proof of future financial responsibility. The words 'motor-vehicle liability policy' are used in the Act as a term of art, having reference only to policies *certified* as *proof* under the proof section of the Act. This is to distinguish such a policy from

the 'automobile liability policy' which can exempt an operator or owner from furnishing security under Sec. 321A.5 of the Act.[30]

In Duff v. Alliance Mut. Cas. Co.[31] it was stated in part:

> The policy was voluntarily carried * *. In such case the Oklahoma Supreme Court considering a case of non-coverage, has held, United States Fidelity & Guaranty Co. v. Walker (Okl.1958), 329 P.2d 852, 853:
>
> > 'A policy of automobile liability insurance, voluntarily carried by an operator who has never been required to furnish proof of financial responsibility under the provisions of the safety responsibility act, and not certified as such proof, is not "required by said law" and the insurer. is not precluded from relying on policy defenses because of the provisions of 47 O.S.1951 § 521.'[32]

Implicit in our resolution of the issues in this appeal which pertain to Alaska's Motor Vehicle Safety Responsibility Act, is our conclusion that the restrictive endorsement in question does not contravene the public policy of this state as expressed in the act. Appellant's reliance on Wildman v. Government Employees' Ins. Co.[33] is inapposite. There California's public policy was clearly expressed in its enactment of an owner's liability act.[34] We have no such legislation in this jurisdiction.

28. Johnson v. Universal Auto. Ins. Ass'n, 124 So.2d 580, 583–85 (La.App.1960); Perkins v. Perkins, 284 S.W.2d 603, 608–610 (Mo.App.1955).

29. 102 F.Supp. 214, 232 (N.D. Iowa 1952).

30. Compare AS 28.20.060(1) with AS 28.-20.440(a).

31. 296 F.2d 506, 509 (10th Cir. 1961).

32. See State Farm Mut. Auto. Ins. Co. v. Cooper, 233 F.2d 500, 501 (4th Cir. 1956); Farm Bureau Mut. Auto. Ins. Co. v. Hammer, 177 F.2d 793, 797 (4th Cir. 1949), cert. denied, Beverage v. Farm Bureau Mut. Auto. Ins. Co., 339 U.S. 914, 70 S.Ct. 575, 94 L.Ed. 1339 (1950); American Liberty Ins. Co. v. DeWitte,

236 F.Supp. 636, 638–639 (E.D.S.C.1964); New Zealand Ins. Co. v. Holloway, 123 F.Supp. 642, 646–647 (W.D.La.1954); American Serv. Mut. Ins. Co. v. Parviz, 153 Colo. 490, 386 P.2d 982, 987 (1963); Buzzone v. Hartford Acc. & Indem. Co., 23 N.J. 447, 129 A.2d 561, 564 (1957); United States Fid. & Guar. Co. v. Walker, 329 P.2d 852, 856 (Okl.1958).

33. 48 Cal.2d 31, 307 P.2d 359 (1957).

34. In *Wildman*, 307 P.2d at 364, it was said:
Section 402 of the Vehicle Code provides that 'Every owner of a motor vehicle is liable and responsible for the death of or injury to person or property resulting from negligence in the

In our view the basic policy decisions as to whether compulsory insurance was to be required and as to whether all motor vehicle liability policies must conform to the requirements of our Motor Vehicle Safety

Responsibility Act have been previously determined by our legislature. Any change in these policies is peculiarly within that body's province.[35]

The judgment entered below is affirmed.

operation of such motor vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner, and the negligence of such person shall be imputed to the owner for all purposes of civil damages.'

35. Mid-South Ins. Co. v. Lewis, 236 F. Supp. 739, 742 (W.D.La.1964), aff'd, Jones v. Mid-South Ins. Co., 358 F.2d 887 (5th Cir. 1966); Pennsylvania T. & F. Mut. Cas. Ins. Co. v. Travelers Ins. Co., 233 Md. 205, 196 A.2d 76, 80 (1963); Barkwill v. Englen, 57 Wash.2d 545, 358 P.2d 317, 318 (1961).