The WESTERN CASUALTY AND SURETY COMPANY, Appellant,

v.

GENERAL CASUALTY COMPANY OF WISCONSIN, Appellee.

No. 54962.

Supreme Court of Iowa.

Sept. 19, 1972.

McDonald & McDonald, Davenport, for appellant.

McCracken & Carlin, Davenport, for appellee.

HARRIS, Justice.

The question is whether all automobile liability insurance policies written in this state must conform with the provisions of the motor vehicle financial responsibility chapter of The Code. The trial court ruled they must. We reverse.

On August 11, 1969, John J. Montroni, hereafter the insured, loaned his automobile to Yvette Dorsey, hereafter the driver. The driver was not related to the insured; neither had she attained the age of twenty-five years. While so driving the insured's automobile, the driver was involved in an accident with another vehicle. Action has been commenced as a result of the accident.

The policy contains a young driver endorsement. This provision excludes from coverage " * * * any person under twenty-five years of age while operating the automobile unless such person is a relative of the named insured; * * *."

This exclusion is not consistent with the provisions of section 321A.21(2)(b), The Code. That section requires a policy of insurance to contain the omnibus clause: " * * * insure the person * * * and any other person, as insured, using any such motor vehicle * * * with * * * permission * * * against loss * * *."

Obviously, if the omnibus clause just quoted is to be given effect in the policy in question it would void the young driver endorsement.

I. Most of the states have adopted "so-called 'financial responsibility' or 'first bite' laws designed to require liability insurance, as a precondition to continued permission to use the highways, only after the driver had been involved in an accident, convicted of various traffic offenses, or been held liable for damages." 8 A.L. R.3d 388, 390. The "financial responsibility" statutes which prevail in the vast majority of the American jurisdictions are in contrast with the much rarer compulsory insurance laws. Chapter 321A, The Code, is a financial responsibility statute.

"The kind of policy referred to in Sec. 321A.21(6)(a) is a 'motor-vehicle liability policy' which has been certified as proof of future financial responsibility. The words 'motor-vehicle liability policy' are used in the Act as a term of art, having reference only to policies *certified* as *proof* under the proof section of the Act. This is to distinguish such a policy from the 'automobile liability policy' which can exempt an operator or owner from furnishing security under Sec. 321A.5 of the Act." (Emphasis in the original.) Hoosier Cas. Co. of Indianapolis, Ind. v. Fox, D.C., 102 F.Supp. 214, 232. The basis for the decisions interpreting financial responsibility laws was aptly described in United States Casualty Co. v. Brock (Tex.Civ.App.), 345 S.W.2d 461, 464:

"The rationale of these cases is that the safety responsibility laws do not provide for compulsory motor vehicle liability insurance; that they are prospective in intendment, operating in futuro and are based upon the philosophy that every dog is allowed by the law one free bite; that such laws apply only to a second accident and not to a first accident; that there is no requirement that the owner or operator of a motor vehicle carry a policy of liability insurance or that it contain any particular provisions unless and until the safety responsibility law has been invoked by the occurrence of some event resulting in the order of a state official that security be deposited or that proof of financial responsibility be made; that the policy must be a 'required' policy before the provisions of the safety responsibility law are to be incorporated therein."

II. The question presented in this appeal is not answered by the distinction between compulsory insurance and financial responsibility laws.

"With the widespread adoption of financial responsibility laws, many insurers began including in their policies, even in those not issued to motorists required to post financial security, a provision that it should comply with the terms of applicable financial responsibility laws. When motorists carrying such policies became involved in their initial accident, under circumstances in which the insurer would have had a defense to liability under the ordinary terms of the policy but not if the policy were read as containing the statutory provisions, * * * (this) question * * * arose." 8 A.L.R.3d 388, 391.

From the annotation just cited it appears the majority and growing view is "that the statutory conformity operated only prospectively and that the insurer was entitled to rely upon ordinary policy defenses as to liability arising from the first accident." 8 A.L.R.3d 388, 391. There is a minority view, prevailing principally in California and Arizona.

We are required by the Iowa chapter to adhere to the majority view. Section 321A.21, the Code, containing the omnibus clause upon which insured relies, expressly limits the definition of the term "motor vehicle liability policy" to those situations where the " * * * term is used in this chapter * * * "

The legislature, in other situations, has chosen to extend application of an insurance policy requirement beyond the chapter

in which the requirement is listed. We cannot consider this accidental. Both chapter 516, The Code, dealing with liability policies covering unsatisfied judgments and 516A, The Code, dealing with protection against uninsured motorists, are unequivocal. Policy provisions required in both of the latter mentioned chapters expressly apply to all policies issued in this state by any company.

We are forced to adhere to the majority view prevailing among the states. The provisions of our financial responsibility act do not void the provisions of a voluntary insurance contract, in those situations beyond the contemplation of the act. We regret this holding to some extent may seem in conflict with a hope previously expressed by a legion of authorities including our own. See Motor Vehicle Cas. Co. v. LeMars Mut. Ins. Co., 254 Iowa 68, 76, 116 N.W.2d 434, 439. The hope is the public would be protected from financial irresponsibility of motorists upon our streets and highways. In the pursuit of this end we cannot substitute a compulsory insurance law for a financial responsibility law. Neither can we arrogate to ourselves authority to remove or to alter an express limitation given by the legislature upon the extent of insurance protection they wished the public to have. The case must be and is hereby

Reversed.

○

All Justices concur, except LeGRAND, MASON, REYNOLDSON and McCORMICK, JJ., who dissent.

LeGRAND, Justice (dissenting).

This case of first impression involves an interpretation of chapter 321A, the Code, with reference to its effect on the omnibus clause in insurance policies issued before an insured has been involved in an accident. The question is this: Must such policies be drawn to comply with chapter 321A or does that chapter become effective only in futuro after an accident has occurred?

There are two lines of authorities, and I believe the majority has chosen the one which, though numerically superior, had nothing else to recommend it, leading as it does to a result which is both unjustified and unfair.

The majority distinguishes between financial responsibility statutes and compulsory insurance laws. It is said our chapter 321A is a financial responsibility statute which requires nothing of an owner of an automobile until he has been involved in an accident. Only then must he furnish evidence of financial responsibility. By following this one step further, the majority finds insurance policies issued to those who have not yet met with misfortune need not comply with chapter 321A.

The case at hand involves a claim against the owner of an automobile whose car was being driven by a person under 25 years of age. The omnibus clause of the owner's policy excluded coverage for young drivers unless related to the insured. There is no relationship here. If chapter 321A applies, this exclusion is void because it is not consistent with the provisions of section 321A.21(2)(b); if it does not, the defense raised is good and there is no insurance coverage for the owner, driver, or, more important, the accident victims.

I believe the result reached by the majority is frustrative of the legislative intent in the enactment of chapter 321A and it fails to recognize the overriding purpose of that legislation—to protect the public from financial loss resulting from traffic accidents. See Motor Vehicle Casualty Company v. LeMars Mutual Insurance Company, 254 Iowa 68, 76, 116 N.W.2d 434, 439 (1962). It seems incredible that this legislative intent can be accomplished only after every motorist in this state, both present and future, has had one "free" accident.

The majority professes "regret" at reaching this "required" result. I do not believe it is "required." Other courts have not found it so. See Jenkins v. Mayflower Insurance Exchange (1963), 93 Ariz. 287, 380 P.2d 145, 147 and Wildman v. Government Employees' Insurance Company (1957), 48 Cal.2d 31, 307 P.2d 359; Selected Risks Insurance Company v. Zullo, 48 N.J. 362, 225 A.2d 570, 575, 576 (1966); Winterton v. Van Zandt (Missouri 1961), 351 S.W.2d 696, 700.

I have no quarrel with the authorities cited in the majority opinion. They say what the majority says they say. See Annot. at 8 A.L.R.3d 388 (1966). I simply urge the adoption of the minority rule.

In construing statutes we are committed to the principle that we should take into consideration the purpose sought to be achieved, the mischief to be remedied, and whether the particular interpretation will lead to impractical or absurd results. I think the majority violates each of these precepts. See Cedar Memorial Park Cemetery Association v. Personnel Associates, Inc., 178 N.W.2d 343, 347 (Iowa 1970); State v. Charlson, 261 Iowa 497, 154 N.W. 2d 829, 831, 832 (1969); State v. Bishop, 257 Iowa 336, 340, 132 N.W.2d 455, 457 (1965); Monroe Community School District v. Marion County Bd. of Ed., 251 Iowa 992, 998, 103 N.W.2d 746, 749 (1960).

The majority opinion rests largely upon the delicate and tenuous distinction between an *automobile* liability policy as that term is used in section 321A.5 and a *motor vehicle* liability policy as that term is used in 321A.21(2). It does so despite the fact that in section 321A.1, "motor vehicle" and "automobile" are held to be synonymous terms. If they are synonymous, there is no reason for making any distinction between a motor vehicle liability insurance policy and an automobile liability insurance policy.

The argument that the two mean the same *except* when referring to insurance coverage is specious and contrary to all ac-

cepted rules of statutory construction. The statute contains no exception. Several of the cases above cited make this very point. Even more important is the fact that the majority's interpretation of chapter 321A permits not only a "first bite" but makes is possible to avoid complying with the provisions of the Safety Responsibility Act indefinitely. Section 321A.5 holds the provisions as to cancellation and suspension do not apply *at all* to those who at the time of the first accident are covered by an automobile liability insurance policy. Unless this means that such a policy must conform to the requirements of section 321A.21(2), the legislature has set up a self-defeating procedure by which motorists can avoid complying with the Safety Responsibility Act even after their "free" accident. The only logical explanation for the provision in section 321A.5 excepting those who had an automobile liability policy from the operation of the act is that they had already complied with it; and this is true only if the omnibus clause of the automobile liability policy meets the requirements of section 321A.21(2).

This was pointed out in Standard Accident Insurance Company v. Allstate Insurance Company, 72 N.J.Super. 402, 178 A.2d 358, 364 (1962) in the following language:

"Today the statutory omnibus clause is only required to be included in a policy 'furnished as proof of financial responsibility' * * *. As noted, the security section of [the New Jersey Financial Responsibility Act] is not applicable if there is in effect 'an automobile liability policy with respect to the motor vehicle involved in such accident.' Although there is no explicit statutory requirement that such a policy, in order to relieve the insured from the security provision, must conform to the requirement of [the New Jersey Financial Responsibility Act], it would be anomalous to say that the statute does not require such insurance to conform to the coverage specified in [such act]—i. e., coverage which insures not only the named insured but 'any oth-

er person using or responsible for the use of any such motor vehicle with the express or implied consent of the insured.' If this were not so, an owner, by taking out a policy covering the automobile only when he was driving, could avoid the impact of the Security-Responsibility Law * * *. Remedial legislation should not be so interpreted."

I agree with the Supreme Court of Arizona, which said when faced with a similar problem in Jenkins v. Mayflower Insurance Exchange, supra, 380 P.2d at page 147:

" * * * We cannot constitutionally allow artful distinctions between 'motor vehicle liability policy,' 'automobile liability policy', or 'policy of insurance' to defeat the purpose of the [Financial Responsibility] act."

I believe that should be our conclusion, too. Sometimes courts complain that stare decisis prevents a result they might have otherwise reached. We have no such excuse here. When we are taking our first look at a statute of such widespread importance, embodying, as it does, the announcement of a public policy touching the every-day lives of virtually all citizens, we should be guided by something more than a head-count of other jurisdictions. We are in the advantageous position of being able to choose from two lines of respectable authority. Our choice should be that which is best, not that which is most.

The determinative circumstance to me is the conflict between section 321A.5 (which excuses one who has an automobile liability policy from the suspension provisions of the Act) and section 321A.21 (which the majority says applies only to policies written after the occurrence of the first accident). I have already mentioned the anomaly which results from this interpretation. When we face the claim—as some day we will—that a motorist need not have a policy which conforms to section 321A.-21(2), even though he has been involved in an accident, because he had previously complied with section 321A.5, I do not

doubt our resourcefulness in finding an escape from such an unacceptable result. But that only points up today's dilemma. Instead of waiting for that argument and disposing of it *then* by some judicial legerdemain, we should put an interpretation on this chapter *now* which gives life to the public policy there expressed.

Perhaps it is unnecessary to add that I would affirm the trial court.

MASON, REYNOLDSON and McCORMICK, JJ., join in this dissent.