MINNET, JAMES F., Associate Judge.
On July 4, 1964, Ulysses Griffin, husband of Emma D. Griffin, was involved in an accident while driving the station wagon of his wife. Lawsuits for personal injuries resulted from the accident and are now pending.
In August of 1963, Ulysses Griffin insured his pickup truck through Phoenix Assurance Company of New York, hereinafter referred to as “Phoenix”, which “Family Auto Coverage Policy” was an assigned risk under the Financial Responsibility Law of the State of Florida. The plaintiff’s policy provided, among other things, that the coverage would not apply to any loss against which the named insured or spouse has other valid and collectible insurance. (Emphasis supplied)
In November of 1963, the wife, Emma D. Griffin acquired a 1961 Rambler station wagon but she did not obtain insurance until December 21, 1963, when she purchased her “Family” combination automobile policy from Bankers and Shippers Insurance Company of New York, hereinafter referred to as “Bankers”.
Both Mr. and Mrs. Griffin obtained their insurance through Anderson and Sethness, Inc., by Carl Anderson who was agent for Phoenix and Bankers. In the Bankers policy, Carl Anderson as agent executed the following exclusionary endorsement:
“It is hereby agreed and understood no coverage shall apply under this policy for occurrences which take place while any vehicle is being operated by Ulysses Griffin.” Signed “Emma D. Griffin”.
Both Phoenix and Bankers policies provide $10,000 and $20,000 liability with property damage of $5,000. Bankers policy under “Other Insurance” provides as follows:
“If the insured has other insurance against a loss covered by Part III of this policy, the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability of this policy bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance.”
Phoenix’s policy under the provision “Newly Acquired Automobiles” provides as follows:
“The insurance with respect to the newly acquired automobile does not apply to any loss against which the named insured or such spouse has other valid and collectible insurance.”
Following the filing of the personal lawsuits, both Phoenix and Bankers denied coverage and declaratory action was filed by Phoenix. The trial court entered a summary, final decree holding:
“(1) the exclusionary endorsement on the Banker’s policy void as repugnant to the Financial Responsibility Law, F.S. 324.011, et seq.; (2) at the time of the delivery of the station wagon in November 1963 defendant Phoenix insured all motor vehicles owned by Ulysses and Emma Griffin; therefore, coverage was provided for Ulysses & Emma Griffin for the collision of July 4, 1964 under the policy issued by Phoenix to Ulysses Griffin; (3) both policies were effective and applicable to the July 4 accident and defendant Phoenix and plaintiff Bankers should bear liability equally on a pro rata basis.”
The problem of the applicability of “other valid and collectible insurance” will be presented with yet untold factual situations and thus the rule of law, if it is to be announced, should answer the question of whether in this case one or the other pol *124 icy is “primary insurance”. Many cases have already been considered which arrange and rearrange carrier obligations under multiple coverage policies óf clauses relating to primary, secondary, excess, temporary, borrowed or substituted vehicles as limits involving the problem of overlapping or conflicting policy clauses. If a policy purports to grant general coverage, a better rule to insure protection for the public would be to pronounce that that policy is the primary insurer and any other as sec-, ondary. Where choice cannot be made and there is no real basis to distinguish the policies, then the applicability of the pro rata rule should follow. This should be used where conflicts are irreconcilable and the carriers themselves then be compelled to pro rate. There can exist many factual circumstances where circular reason can be used to give one policy a different effect or result than the other and thus the carriers by not applying the rule of primary and excess coverage could reach a basis as they claim in this case. The matter of apportionment between carriers remains complex and the industry should be left to continue its effort to insure on the basis of contractual obligation to become primary, secondary or pro rata. Here both husband and wife, owning two vehicles, have acquired two policies of insurance through the same agent and the carriers then taking the position that neither is responsible for the loss because both are excess carriers. If the courts were to follow this reasoning an absurd result would occur and the public would not be protected.
In Auto-Owners Insurance Company v. Palm Beach County, Fla.App.1963, 157 So. 2d 820, the court discusses the complexity of this problem and cites some of the background and the law having to do with “other insurance clauses”. This case differs because in the Auto-Owners case it was admitted that the employee had “valid and collectible insurance”. Here, neither carrier admits such an issue. Phoenix’s position is that its escape clause as referred to above is clear and the acquisition by Mrs. Griffin of her vehicle, coupled with the purchase of a policy, makes that automobile and its driver primarily responsible. Bankers claims that the exclusionary endorsement eliminating Ulysses Griffin is clear and unequivocal and therefore valid.
The lower court found a transgression of the Financial Responsibility Law by virtue of the exclusionary endorse-' ment. While admitting the parties are free to contract, they are not free to write clauses which are against public policy or are so unreasonable or unusual so as to thwart the dominant purpose of the payment of money to obtain protection in compliance with the Financial Responsibility Law. If validity were given to the exclusionary endorsement, the policy of Bankers would, in effect, limit the coverage and defeat the purpose of the act and would not protect the public. We, therefore, concur with the finding of the lower court that the exclusionary endorsement of Bankers policy is repugnant to the Financial Responsibility Law. We hold therefore that Bankers contract should be construed without the endorsement. See Howard v. American Service Mutual Insurance Company, Fla.App.1963, 151 So.2d 682, 8 A.L.R.3d 382, for a discussion of the applicability of the Financial Responsibility Law as remedial legislation.
In Sellers v. United States Fidelity and Guaranty Company, Fla.1966, 185 So.2d 689, the Florida Supreme Court discussed the limiting type of coverage which the financial liability law imposes. While this case does not present a parallel, it does point out the application of other insurance clauses and sets forth the principle that under separate automobile liability policies the policies can be pyramided so as to equal the actual bodily injury loss or damage, but not otherwise. Thus, this decision points out clearly the importance of excess coverage as “other insurance”. Dicta in the Sellers v. U.S.F. & G. case, supra, refers to a discussion by Mr. Norman Broad in the Flori *125 da Law Review, Volume 14, No. 4, Page 468, wherein he says that:
“ * * * ‘Courts attempting to reconcile conflicting “other insurance” provisions will also disappoint the contractual expectations of at least one insuring company.’ After exhaustive analysis of the subject, he concludes that the best solution would be to avoid these clauses as hopelessly in conflict and prorate the loss between the carriers in the proportion that the policy bears to the total amount of the insurance available.”
With the elimination of the exclusionary endorsement in the Bankers policy, we find that the clauses are not in hopeless conflict but rather put the carriers in their appropriate places on the ladder of liability. Third parties may pursue their claim against the Griffins with the liability of Bankers primary and that of Phoenix excess and we so decide.
In view of .the foregoing the order of the lower court is reversed in part to comply with the reasons herein set forth.
ANDREWS and CROSS, JJ., concur.