Roi EVRON, Appellant,

v.

David GILO d/b/a Delta Painting, Tova Wald, and Providence Washington Insurance Company of Alaska, Appellees.

No. S–2583.

Supreme Court of Alaska.

June 30, 1989.

Lewis F. Gordon and Jane A. Steckbeck, Baily & Mason, for appellant.

Mark A. Sandberg, Camarot, Sandberg & Smith, Anchorage, for appellee David Gilo d/b/a Delta Painting.

Robert C. Erwin and Michael J. Hanson, Erwin & Smith, Anchorage, for appellee Providence Washington Ins. Co. of Alaska.

Before MATTHEWS, C.J., and RABINOWITZ, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Chief Justice.

### INTRODUCTION

Roi Evron appeals the trial court's dismissal of his personal injury action against Providence Washington Insurance Company and David Gilo. The superior court dismissed Evron's action against Providence Washington on the grounds that Alaska law prohibits direct actions against insurance companies. Subsequently, the court dismissed Evron's complaint against Gilo pursuant to Civil Rule 16.1 for want of prosecution.

### FACTS AND PROCEEDINGS

Evron was injured in a car accident in January 1984. He was a passenger in a car owned by David Gilo and driven by Tova Wald, one of Gilo's employees.

In December 1985, Evron filed a personal injury action against Gilo, Wald, and Gilo's insurer, Providence Washington. Evron al- leged that his injury resulted from Wald's negligence and that Gilo was liable under theories of respondeat superior and negligent entrustment. Evron further alleged that he was an insured or a third party beneficiary under the insurance policy issued by Providence Washington to Gilo and asserted that Providence Washington was liable to Evron for damages sustained as a result of the accident.

Providence Washington promptly answered Evron's complaint but Evron was unable to complete service upon Gilo until approximately fourteen months later.[1] The record does not indicate whether Evron ever completed service upon Wald. On August 15, 1986 the parties were informed that the so-called "Fast Track" procedures, Alaska Rule of Civil Procedure 16.1, would govern the case.

Providence Washington moved to dismiss the complaint against it, arguing that *Severson v. Estate of Severson*, 627 P.2d 649 (Alaska 1981), prohibits direct actions against insurance companies. Following extensive briefing by the parties and a hearing, Superior Court Judge Milton Souter dismissed the complaint against Providence Washington on January 30, 1987.

When Judge Souter dismissed Providence Washington from the litigation, Evron still had not served Gilo with the complaint. Accordingly, Evron filed an Affidavit of Diligent Inquiry and sought permission to serve Gilo by publication. On January 30, 1987, Judge Souter ordered service by publication and Gilo's counsel answered Evron's complaint on April 27, 1987.

On August 4, 1987, the superior court deputy clerk notified Evron that his case had been on file with the court for 270 days without a motion to set trial having been filed as required by Alaska Rule of Civil Procedure 16.1(g).[2] Therefore, the clerk informed Evron that his case was being

---

1. Apparently, Gilo moved from Alaska without leaving a forwarding address.

2. Alaska Rule of Civil Procedure 16.1(g) provides in pertinent part:
    (g) Inactive Calendar and Dismissal. Where a motion to set trial and certificate have not been filed within 270 days after the service of the summons and complaint, the case shall be transferred to the inactive calendar by the clerk of court. The clerk shall promptly notify counsel in writing of the transfer. All cases which remain on the inactive calendar for more than 60 days shall be dismissed, unless within that period: (1) A proper motion to set trial and certificate is filed; or (2) the court on motion for good cause orders a case continued on the inactive

placed on the inactive calendar and would be dismissed unless a proper motion for trial was filed within sixty days.

Evron did not respond to the clerk's notice within sixty days and on October 30, 1987 Superior Court Judge Joan M. Katz[3] dismissed Evron's complaint without prejudice.

On November 3, 1987, Evron filed his witness and exhibit lists.[4] According to Evron's counsel: "These items [the witness and exhibit lists] were literally on their way to court for filing when the court's dismissal order was received." On November 9, 1987, Evron filed a "Motion to Set Trial and Certificate," and a motion to reconsider the dismissal based upon excusable delay, lack of prejudice to Gilo and readiness to proceed. Evron argued that the delay was excusable because he had been living abroad for most of the previous year, and upon returning to Alaska he secured employment on the North Slope where he did not have ready access to a telephone. In addition, he argued that his counsel was frequently out of state due to numerous depositions in an important products liability case. For these reasons, Evron and counsel were unable to "coordinate their efforts in preparing the necessary Rule 16.1 filings."

On December 7, 1987, Judge Katz denied Evron's reconsideration motion. In her order, Judge Katz wrote:

> Plaintiff made no effort to extend the 60 day deadline set forth in the Aug. 4, 1987 Notice of Transfer to Inactive Calendar & of Intent to Dismiss. No justification for failing to act within the 60 day period has been advanced.

Evron refiled his complaint (3AN-88-499 CIV) in Anchorage Superior Court on January 6, 1988 (the "second case"), and filed a notice of appeal of the original case on January 7, 1988. On January 29, 1988 Gilo filed a motion for entry of judgment in the original case. Gilo's motion included a request for attorney fees and costs. Judge Katz entered judgment in favor of Gilo on February 29, 1988 and ordered that attorney's fees be awarded to the prevailing party in the "second case."

On April 29, 1988 Gilo removed the "second case" to federal court (No. A88-219) and moved for summary judgment arguing that the statute of limitations and the doctrine of *res judicata* barred the action. Evron responded that Alaska's savings statute, AS 09.10.240,[5] applies to Rule 16.-1(g) dismissals without prejudice.

The federal district court granted Gilo's summary judgment motion on November 1, 1988. The court concluded that Alaska's savings statute, AS 09.10.240, only applied where dismissal occurred after a trial had begun or an appeal had commenced.[6]

Evron appeals Judge Souter's order dismissing Providence Washington from the litigation and Judge Katz's order dismissing his complaint pursuant to Alaska Rule of Civil Procedure 16.1(g).

## I. DID THE TRIAL COURT ERR IN DISMISSING EVRON'S COMPLAINT AS TO GILO?

### A. *Is This Case Properly Before This Court?*

Gilo argues that the superior court's October 30, 1987 order dismissing Evron's

---

calendar for a specified period of time. Notwithstanding Civil Rule 41(b), the dismissal does not operate as an adjudication upon the merits unless a previous dismissal has been entered by the court under this rule, or by the plaintiff or parties under Civil Rule 41(a)(1).

**3.** Judge Souter was disqualified and replaced by Judge Katz on March 17, 1987.

**4.** Witness and exhibit lists must be filed before a motion to set trial is filed. Alaska R.Civ.P. 16.1(d).

**5.** Alaska Statute 09.10.240 provides in relevant part:

If an action is commenced within the time prescribed and is dismissed upon the trial or upon appeal after the time limited for bringing a new action, the plaintiff ... may commence a new action upon the cause of action within one year after the dismissal or reversal on appeal.

**6.** In *Shiffman v. K, Inc.,* 657 P.2d 401, 402 n. 1 (Alaska 1983) this court declined to decide whether a case dismissed for want of prosecution before trial falls within the statute of limitations saving statute so as to extend the time for refiling.

complaint without prejudice is not an appealable order and that Evron's appeal of the October 30 order was premature because the court did not enter final judgment until February 27, 1988. These arguments are without merit.

■ A judgment of dismissal without prejudice is a final judgment for purposes of appeal, unless leave to amend is specifically granted. *Standard Alaska Production Co. v. State*, 773 P.2d 201 (Alaska 1989). This rule extends to dismissal for want of prosecution. An order dismissing a cause of action for want of prosecution, whether with or without prejudice, terminates the action and, therefore, constitutes a final and appealable order. *Drake v. Southwestern Bell Tel. Co.*, 553 F.2d 1185, 1186 (8th Cir.1977). *See also* 5 J. Moore, J. Lucas & J. Wicker, *Moore's Federal Practice*, ¶ 41.11[2] at 41–143 (2nd ed. 1986) ("Dismissal for failure to prosecute, whether with or without prejudice, is a final judgment disposing of the matter and is, therefore appealable...."). The Order of Dismissal was complete in itself, and contains no indication that an additional document would be needed to reflect a final judgment. The fact that the court later, at the behest of Gilo, entered a document entitled "Judgment" did not affect the finality of the Order of Dismissal.

Further, even if Evron's appeal was filed too early, it would automatically be taken as timely filed upon entry of the final judgment under Appellate Rule 204(a)(6):

> If a notice of appeal is filed after the announcement of a decision but before the date shown in the clerk's certificate of distribution on the judgment, the notice of appeal shall be treated as filed on the date shown in the clerk's certificate of distribution on the judgment.

Thus a party taking an early appeal in circumstances where there is uncertainty

as to whether a final judgment exists does not risk losing the right to appeal.[7]

### B. *Is Reversal Required Because The Court Erred In Computing The Time Limits Under Civil Rule 16.1?*

■ Evron argues that the superior court's dismissal of his complaint was erroneous because the court had miscalculated the time period for transferring his case to the inactive calendar. Gilo responds that there was no error in calculating the time and that Evron failed to raise this argument in the trial court, and therefore it should not be considered on appeal.

Gilo's argument that the dismissal was not premature is based on an interpretative memorandum authored by Presiding Judge Serdahely. The memorandum states in part:

> You have asked for guidance, with respect to *pending* civil cases, in determining the date on which the Fast Track Rule is deemed to be invoked for purposes of calculating time periods within such Rule. I am advising you to interpret the Rule to commence, for pending cases, on the particular date on which the Order has been signed invoking the Rule 16.1 procedures. In other words, such invocation date is to be used as the "service date" or first day of operation of the rule, for time period calculations of the Rule, in all pending, fast track eligible cases.

Memorandum of Presiding Judge Douglas J. Serdahely to LeEllen Baker at 2 (May 21, 1986). Since this case was filed before the fast track rule went into effect, this case was a pending case within the terms of Judge Serdahely's memorandum. The order that this case would be subject to fast track procedures was issued on August 15, 1986. Thus, as Gilo interprets Judge Serdahely's memorandum the clerk was authorized to place this case on the inactive calendar because more than 270 days had

---

7. *Compare Osterneck v. Ernst & Whinney*, — U.S. ——, 109 S.Ct. 987, 103 L.Ed.2d 146 (1989), holding that a motion for discretionary prejudgment interest filed after entry of judgment voids a prior notice of appeal. That decision is based on Federal Rule of Appellate Procedure 4(a)(4), which differs significantly from the Alaska Rules of Appellate Procedure. *See, e.g.,* Appellate Rule 204(a)(5)[a], which states that "[t]he running of the time for filing an appeal is not terminated by proceedings related to the taxing of costs ... or while awaiting calculation of prejudgment interest."

passed since the case had been designated as a fast track case.

We find this argument to be without merit for two reasons. First, Judge Serdahely's memorandum concerning pending civil cases is best interpreted to mean pending cases in which service of the summons and complaint has been accomplished. Otherwise, one might be required to file a motion to set trial prior to service of the summons and complaint. Second, interpreting the memorandum as Gilo does makes it inconsistent with Civil Rule 16.- 1(g), which sets the deadline for filing a motion to set trial and certificate at 270 days after the service of the summons and complaint. If the memorandum is inconsistent with the Rule, the inconsistency must, of course, be resolved in favor of the Rule.

The case was prematurely placed on the inactive calendar by the clerk of court. Under Civil Rule 16.1(g) transfer to the inactive calendar is to occur "where a motion to set trial and certificate have not been filed within 270 days after the service of the summons and complaint." In the present case, service of the summons and complaint on Gilo did not occur until March 3, 1987, when the final publication of notice was made. Thus, transfer to the inactive calendar should not have taken place until, at the earliest, November 29, 1987. This fact was evident from the proof of publication in the court file.

Although the court erred in transferring the case to the inactive calendar too early, Evron's counsel had an opportunity to point out this error prior to dismissal of the case and did not do so. Counsel was promptly notified in writing of the transfer to the inactive calendar. The notice reiterated the language of the Rule that dismissal would follow after sixty days unless a motion to set trial and certificate was filed or unless the court on motion and for good cause shown ordered the case continued on the inactive calendar. Although the notice did not speak explicitly of a motion to rescind the transfer of the case to the inac-

tive calendar, there is no doubt that such a motion could have been made.

■■■ Ordinarily arguments that are not raised before the trial court are considered waived for the purposes of appeal. *Williams v. Alyeska Pipeline Serv. Co.*, 650 P.2d 343, 351 (Alaska 1982). That rule is limited by the doctrine of plain error which allows consideration of points not raised at the trial level if the judicial action was obviously erroneous, affected substantive rights, and was obviously prejudicial. *Matter of L.A.M.*, 727 P.2d 1057, 1059 (Alaska 1986). Further, not every point that is heard on appeal must be raised before the trial court. For example, objections as to the findings of the trial court in a judge tried case need not be first presented to the trial court. *Isaacs v. Hickey*, 391 P.2d 449, 452 (Alaska 1964). Likewise a party against whom a motion for summary judgment has been granted may, in some circumstances, challenge that action on the basis that the movant did not show that there were no genuine issues of material fact without first making such an argument in the trial court. *Drake v. Hosley*, 713 P.2d 1203 (Alaska 1986).

■■■ Whether Evron's failure to raise the fact that 270 days had not passed since service on Gilo is subject to the rule that points not raised in the trial court may not be heard on appeal is an open question. The dismissal was on the court's own motion and was based on the clerk's erroneous unilateral determination that 270 days had passed since Gilo was served. We need not, however, resolve this question, as we are persuaded that the court committed plain error in dismissing this case following its premature transfer to the inactive calendar. This error was obvious. A review of the service information in the file clearly shows that 270 days had not passed since Gilo was served. It is also obviously prejudicial as it has resulted in the dismissal of Evron's complaint at a time more than two years after the accident which gave rise to the complaint, thus presenting the possibility that any re-filed case may be barred by the two-year statute of limitations pertain-

ing to personal injury suits. AS 09.10.070.[8]

Although what we have said disposes of this case, we also note our agreement with the approach taken by the Supreme Court of Arizona concerning motions for relief from dismissals under Arizona's similar "fast-track" rule in *Gorman v. City of Phoenix,* 152 Ariz. 179, 731 P.2d 74 (1987). The Arizona court observed that in considering motions to set aside dismissals one factor of prime importance was whether the moving party would in effect suffer a dismissal with prejudice because a statute of limitations had run. *Id.* 731 P.2d at 78. Other points which may be considered include whether the party concerned was actively involved in the prosecution of the case at the time of dismissal and whether the parties had taken reasonable steps to inform the court of the status of the case. *Id.*

## II. DID THE TRIAL COURT ERR IN DISMISSING THE COMPLAINT AS TO PROVIDENCE WASHINGTON?

▆▆▆ In *Severson v. Estate of Severson,* 627 P.2d 649 (Alaska 1981), we held that a victim could not maintain a direct action against the liability insurance company of the tortfeasor. We noted that this was in accordance with the common law rule prevailing in other United States jurisdictions. *Id.* at 651.

Evron argues that passage of the mandatory automobile liability insurance law in Alaska in 1984, AS 28.22.010, has required reconsideration of the question whether direct actions by tort victims against liability insurers should be permitted. Evron cites three New Mexico cases, *Anchor Equities,*

*Ltd. v. Pacific Coast American,* 105 N.M. 751, 737 P.2d 532 (1987); *England v. New Mexico Highway Comm'n,* 91 N.M. 406, 575 P.2d 96 (1978); *Breeden v. Wilson,* 58 N.M. 517, 273 P.2d 376 (1954), and one Oklahoma case, *Tidmore v. Fullman,* 646 P.2d 1278 (Okla.1982). The doctrine reflected by these cases is that direct actions may be maintained where insurance was purchased "by force of legislative enactment," where the insurance was intended to inure to the benefit of the public, and where there is nothing in the language of the statute which negates the idea of a direct action against the liability insurer. *See, e.g., England v. New Mexico Highway Comm'n,* 575 P.2d at 98–99. Since those conditions are unmistakably present with respect to insurance purchased under Alaska's mandatory insurance law, Evron argues that a direct action can be maintained.

We can see no reason to reconsider our *Severson* decision. Alaska's mandatory insurance law did not take effect until January 1, 1985, nearly one year after the accident in question. Section 23, ch. 70, SLA 1984. Further, at least with respect to motor vehicles, the purchase of liability insurance has been encouraged by statute, if not strictly compelled, since statehood. *See* the Alaska Motor Vehicle Safety Responsibility Act, AS 28.20.010–28.20.640.[9] We see no reason to change our adherence to the well-settled rule that no direct action may be maintained by a victim against a liability insurer merely because the legislature has changed Alaska's automobile insurance law from a system which encourages the acquisition of liability insurance to one which requires such insurance. There is no language under the mandatory act

---

**8.** In reaching this conclusion, we express no view concerning the correctness of the conclusion of the United States District Court in the second filing of this case that the saving statute, AS 09.10.240, did not apply.

**9.** Alaska Statute 28.20.010 provides:
The legislature is concerned over the rising toll of motor vehicle accidents and the suffering and loss inflicted by them. The legislature determines that it is a matter of grave concern that motorists be financially responsible for their negligent acts so that innocent victims of motor vehicle accidents may be recompensed for the injury and financial loss

inflicted upon them. The legislature finds and declares that the public interest can best be served by the requirements that the operator of a motor vehicle involved in an accident respond for damages and show proof of financial ability to respond for damages in future accidents as a prerequisite to the person's exercise of the privilege of operating a motor vehicle in the state.
The operation of the Motor Vehicle Safety Responsibility Act was explained in some detail in *Hart v. National Indemnity Co.,* 422 P.2d 1015, 1018–1021 (Alaska 1967).

from which a reasonable inference can be drawn that a direct action was intended, and no policy reasons suggesting a need to change the common-law rule have been presented in the briefs before us.

## III. CONCLUSION

For the above reasons, the judgment of the superior court is REVERSED as to the dismissal of the claim against David Gilo and AFFIRMED as to the dismissal of the claim against Providence Washington Insurance Company of Alaska.

AFFIRMED in part, REVERSED in part.

BURKE, J., not participating.