David R. GONZALES, Appellant,

v.

Steven KRUEGER; Safeway Stores, Inc.; Clifford M. Gagnon, and Clifford R. Gagnon d/b/a Quality Brick & Stone, Appellees.

No. S–2903.

Supreme Court of Alaska.

Oct. 12, 1990.

Murphy L. Clark and Susan M. Williams, Clark, Walther & Flanigan, Anchorage, for appellant.

Michael G. Briggs and John M. Miller, Guess & Rudd, Anchorage, for appellees.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

**MATTHEWS, Chief Justice.**

This case involves a single-vehicle accident which occurred near Wasilla on August 3, 1986. Present in the vehicle at the time of the accident were Steven Krueger, Clifford M. Gagnon and David R. Gonzales. Gonzales suffered serious injuries. Shortly before the accident Gagnon, while visibly intoxicated, purchased schnapps at the Safeway liquor store in Wasilla.

Gonzales sued, among other defendants, Safeway for knowingly providing alcohol to an intoxicated person who was an occupant of a motor vehicle and who would foreseeably make the alcohol available to others in the vehicle, including the driver. Safeway answered and, after considerable discovery, moved for summary judgment. The trial court granted the motion and dismissed all claims against Safeway. A partial final judgment was entered pursuant to Civil Rule 54(b). Gonzales appeals.

## FACTUAL BACKGROUND

■ On appeal from a grant of summary judgment, we are constrained to take that view of the facts which is most favorable to the non-moving party. *Carter v. Hoblit*, 755 P.2d 1084, 1085 n. 1 (Alaska 1988). It is from this perspective that this statement of facts is made.

At about 5:20 p.m. Gagnon entered the Safeway liquor store, selected a quart bottle of schnapps and approached the checkout counter. The clerk, Ramona Van Cleve, was concerned that Gagnon was drunk and told him she would not sell the alcohol to him. Gagnon then said he wasn't driving.

Van Cleve called her supervisor, Connie Schmidt, for advice. Schmidt asked Gagnon if he had been drinking. When he said yes, she said that she was not "allowed to sell liquor to anyone who had been drinking and let them go out and get in a car and drive away." Gagnon repeated that he was not driving and added that his friend would drive. Schmidt then went outside the store as Krueger walked up. Krueger confirmed to Schmidt, and perhaps to Van Cleve, that Gagnon would not be driving. According to Schmidt, Krueger appeared to be sober. His speech and gait appeared normal and he did not have alcohol on his breath. Schmidt approved the sale of schnapps to Gagnon. Schmidt then watched Gagnon approach the passenger side of the vehicle and Krueger approach the driver side.

■ Inside the truck Gagnon opened the bottle and shared it with Krueger who was driving.[1] The accident occurred at about 6:00 p.m.

Following the accident, Krueger was taken to the emergency room of Valley Hospital where he reported to a physician that he had six beers on the evening of the accident. A blood alcohol test was taken at 8:30 p.m. which showed that Krueger had a blood alcohol level of 0.16% at the time of the accident.[2] The legal limit is 0.10%. AS 28.35.030(a)(2).

## DISCUSSION

■ Under the dram shop statute, a person who provides alcoholic beverages to another person is immune from civil liability for damages caused by the intoxication of that person unless the provider is licensed to dispense such beverages and the person to whom the beverages are provided is a "drunken person."[3] A "drunken per-

---

**1.** There is also evidence that Gonzales was the driver. Under the open container statute, AS 28.35.029, a person may not operate a motor vehicle when there is an open bottle of an alcoholic beverage in the passenger compartment of the vehicle.

**2.** Gagnon's blood alcohol level was .30 and that of Gonzales was .25 at the time of the accident.

**3.** AS 04.21.020 reads in pertinent part:
*Civil liability of persons providing alcoholic beverages.* A person who provides alcoholic

beverages to another person may not be held civilly liable for injuries resulting from the intoxication of that person unless the person who provides the alcoholic beverages holds a license authorized under AS 04.11.080–04.11.-220, or is an agent or employee of such a licensee and

. . . .

(2) the alcoholic beverages are provided to a drunken person in violation of AS 04.16.030. At the time of the accident, AS 04.16.030 read in full:

son" is a person whose conduct is substantially and visibly impaired as a result of alcohol ingestion.[4]

Safeway offers two related arguments as to why it cannot, as a matter of law, be civilly liable for Gonzales' injuries. First, Safeway contends that even if Gagnon was visibly intoxicated when Safeway sold him the liquor, Safeway cannot be held liable because Krueger, the driver, was not visibly intoxicated and therefore was not a "drunken person"·under the statute. Second, Safeway argues that because it sold alcohol to the passenger rather than the driver of the vehicle, Gonzales' injuries were not proximately caused by the transaction.

■ We reject both arguments. That Krueger may not have been a drunken person when Safeway sold liquor to Gagnon does not immunize Safeway from liability. Under AS 04.21.020, a licensed provider of alcoholic beverages is entitled to immunity from civil liability only if he does not sell to a drunken person. Safeway is thus not entitled to immunity on summary judgment in this case because it sold the liquor to Gagnon, who was a drunken person. The statute was given this construction in *Williford v. L.J. Carr Investments*, 783 P.2d 235, 239 (Alaska 1989), where we stated:

> The intent of the legislature in enacting AS 04.21.020 was to limit vendor liability in cases where the vendor has provided alcohol in a statutorily permissible manner. We hold that AS 04.21.020 does not

immunize vendors who violate AS 04.16.-030.

■ Regarding Safeway's second argument, it cannot be said that as a matter of law the sale of liquor to Gagnon did not proximately cause the accident. Instead, this is a question for the jury. In *Morris v. Farley Enterprises, Inc.*, 661 P.2d 167 (Alaska 1983), we held that a jury question as to proximate cause was presented in an analogous fact situation. In *Morris*, the defendant liquor store sold liquor to a minor who was a passenger in a vehicle. The minor evidently shared the liquor with the driver of the vehicle. Subsequently, the driver made an illegal turn and collided with another vehicle. We stated the elements of proximate cause:

> [n]egligent conduct may be found to be the "legal cause" of harm if the negligent act "was more likely than not a substantial factor in bringing about [the] injury" . . . .
>
> . . . .
>
> Normally, in order to satisfy the substantial factor test it must be shown *both* that the accident would not have happened "but for" the defendant's negligence and that the negligent act was so important in bringing about the injury that reasonable men would regard it as a cause and attach responsibility to it.

*Id.* at 169 (quoting *State v. Abbott*, 498 P.2d 712, 727 (Alaska 1972)). In concluding

---

*Sale or disposition of alcoholic beverages to drunken persons.* A licensee, an agent, or employee may not with criminal negligence
 (1) sell, give, or barter alcoholic beverages to a drunken person;
 (2) allow another person to sell, give, or barter an alcoholic beverage to a drunken person within licensed premises;
 (3) allow a drunken person to enter and remain within licensed premises or to consume an alcoholic beverage within licensed premises;
 (4) permit a drunken person to sell or serve alcoholic beverages.
AS 04.21.080(a)(1) defines criminal negligence as follows:
 [A] person acts with "criminal negligence" with respect to a result or to a circumstance described by a provision of law defining an

offense when the person fails to perceive a substantial and unjustifiable risk that the result will occur or that the circumstances exists; the risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation.

4. AS 04.21.080(b)(8) provides:
 "[D]runken person" means a person whose physical or mental conduct is substantially impaired as a result of the introduction of an alcoholic beverage into the person's body and who exhibits those plain and easily observed or discovered outward manifestations of behavior commonly known to be produced by the overconsumption of alcoholic beverages.

that the facts presented a question of proximate cause for the jury, we stated:

> It is clear that reasonable persons could conclude that the deaths would not have occurred but for the sale. But for the sale [the driver] would have had no liquor to drink. No evidence has been presented that liquor was acquired from another source. Since [his] blood alcohol level was measured at .134% approximately ninety minutes after the accident, a reasonable person could conclude that but for his consumption of alcohol he would not have made an illegal turn and collided with another automobile.
>
> Reasonable persons could also conclude that the sale was so important in bringing about the deaths that they would regard it as a responsible cause. To meet this test, it is of course not necessary that the sale be the sole or even the predominant cause of the harm. "The wrongful conduct of a number of third persons may also be a cause of that harm, so that such third persons may be liable for it, concurrently with the actor." Restatement (Second) of Torts § 430 comment d (1965), *cited with approval in Sharp* [*v. Fairbanks North Star Borough*], 569 P.2d [178] at 181 n. 6 [(Alaska 1977)]....
>
> We further conclude that the wrongful conduct of [the purchaser] in providing [the driver] with the means of becoming intoxicated did not amount to a superseding cause as a matter of law and therefore did not operate to relieve [the liquor store] of liability.... [I]ntervening causes which lie within the scope of the foreseeable risk, or have a reasonable connection to it are not superseding causes which relieve the initial tortfeasor from liability.... *It was neither unforeseeable nor extraordinary that the youth who purchased liquor would share it with his companions and that an automobile accident caused by the companion's intoxication would result.*

*Id.* at 169–70 (emphasis added) (citations omitted).

The foregoing is sufficient to decide the issues which have been presented to us. It seems appropriate, however, to respond to the interesting issues raised in Justice Moore's concurrence. We do so at this point.

■ AS 04.21.020 describes circumstances under which vendors "may not be held civilly liable for injuries resulting from the intoxication of" the providee. In *Kavorkian v. Tommy's Elbow Room, Inc.*, 711 P.2d 521 (Alaska 1985), we held that by implication the statute thus *permits* imposition of liability (i.e., vendors "may" be liable) for "injuries resulting from the intoxication" of the providee. *Id.* at 523. However, contrary to the position taken by the concurrence, this is not to say that the theory of causation *must* be limited to treating the providee's intoxication as the only causal antecedent. The concurrence overstates our holding in *Kavorkian* as interpreting AS 04.21.020 to preclude consideration of the vendor's negligent provision as a causal antecedent and thereby creating a stricter causation test then would exist under traditional principles.

In *Kavorkian*, we interpreted the statute as removing barriers created by traditional "but for" causation analysis, not erecting barriers where the "but for" test could otherwise be satisfied. We held that under the statute the plaintiff is "not required" to prove that but for the negligent provision the harm would not have occurred (i.e., the plaintiff should not be put to the burdensome task of proving incremental, causative intoxication on the part of the providee). *Id.* at 523. However, this does not preclude a traditional causation approach in a case where, for example, but for cause *can* be traced back to the negligent provision.

Likewise, when negligent provision of liquor was exclusively a common law cause of action, this court rejected the "argument that [vendors] cannot be held liable for continuing to serve an intoxicated patron because the patron would have committed the same acts without the additional alcohol...." *See Nazareno v. Urie*, 638 P.2d 671, 677 (Alaska 1981). This language was relied on in *Kavorkian, see* 711 P.2d at 523, and thus, as a modification to the common

law, *Nazareno* stood for the proposition that plaintiffs would not be held to the burdensome task of proving incremental, causative intoxication. That is, they could frame the "but for" question in terms of the providee's intoxication. As is the case under the current statute, however, there is no suggestion in *Nazareno* that plaintiffs could not choose to frame the "but for" question in terms of the negligent provision.

Accordingly, in *Morris*, a common law case decided after, and expressly reliant upon, *Nazareno*, this court framed the proximate cause question in terms of the negligent provision. Our approach to the question of proximate cause in *Morris* implies that even though the plaintiffs *may* frame the causation question in terms of the providee's intoxication, they are *not required* to do so, and may instead take the more traditional approach. Like *Kavorkian*, *Nazareno* removed barriers created by the traditional approach; it did not erect barriers where traditional "but for" causation could otherwise be proven.

REVERSED and REMANDED.

MOORE, J., with whom BURKE, J., joins, concurring.

MOORE, Justice, concurring, with whom BURKE, Justice, joins.

The court rules that the dram shop act does not require a plaintiff to prove that his injuries were proximately caused by the intoxication of the person to whom the vendor provided liquor. I believe that this conclusion is flatly inconsistent with our statement in *Kavorkian v. Tommy's Elbow Room, Inc.*, 711 P.2d 521 (Alaska 1985) that "under the text of [the dram shop act] the injuries *must result from the intoxication of the drunken person.*" 711 P.2d at 523. Far from being idle dicta, this statement was necessary for us to conclude that a plaintiff is relieved from showing that the negligent provision of alcohol caused or contributed to the intoxication of the purchaser who caused his injuries.

By dismissing *Kavorkian*, the court appears to remove from the statute any requirement that the plaintiff prove that the intoxication of the purchaser caused his injuries. A vendor is liable for all injuries that are proximately caused by its negligent provision of liquor under AS 04.21.-020. However, the common law of proximate causation supplies the very same requirement by limiting a vendor's liability to those injuries that fall within the range of risks that make its conduct negligent. Because liability under the statute depends solely on whether the purchaser was drunk, the risks that make a vendor's provision of liquor negligent are limited to those that stem from the purchaser's intoxication. Thus, although the court rules that the dram shop act does not require a plaintiff to prove that his injuries were caused by the intoxication of the purchaser, the common law of proximate causation dictates that a vendor cannot be held liable for injuries to persons for negligently providing liquor under the act unless the injuries result from the intoxication of the purchaser. If, on remand, the jury concludes that Gonzales' injuries did not result from Gagnon's intoxication, the court must give judgment to Safeway.

By its terms, the dram shop act establishes immunity from civil liability:

> A person who provides alcoholic beverages to another person may not be held civilly liable for injuries resulting from the intoxication of that person unless the person who provides the alcoholic beverages holds a license ... and (1) the alcoholic beverages are provided to a person under the age of 21 years ... or (2) the alcoholic beverages are provided to a drunken person in violation of AS 04.16.-030.

However, since the dram shop act was enacted, we have interpreted this language as implying a cause of action against a licensed vendor who sells alcohol to a drunken person for injuries resulting from the intoxication of that person:

> [AS 04.16.030 and AS 04.21.020], although they are expressed in the negative rather than the affirmative form, clearly imply an affirmative command that a licensee who with criminal negligence provides alcoholic beverages to a

drunken person may "be held civilly liable for injuries resulting from the *intoxication* of that person...." [1]

We relied on this text in *Kavorkian* in holding that a plaintiff is relieved of proving that the negligent provision of alcohol to an intoxicated person contributed to his intoxication. 711 P.2d at 523. Causation under the statute follows from the intoxication of the purchaser, not the particular bottle of liquor purchased.[2]

The court believes that this "overstates" the holding in *Kavorkian*. The court interprets the word "may" in the statement that vendors "may be held civilly liable for injuries resulting from the intoxication of [the person to whom it provides alcohol]" to permit but not require a plaintiff to show that his injuries were caused by the intoxication of the purchaser. *Supra* p. 1321. This interpretation is defeated by the very next sentence in our opinion: "Thus, under the text of our statute *the injuries must result from intoxication of the drunken person.*" 711 P.2d at 523. This is not an idle statement of dicta. Rather, it is the major premise of our holding that the statute does not require a plaintiff to prove the "further link that the intoxication be caused by the negligent providing...." 711 P.2d at 523.

In reaching this holding, we relied on the reasoning of the Connecticut Supreme Court of Errors in *Pierce v. Albanese*, 144 Conn. 241, 129 A.2d 606 (1957). The court interpreted Connecticut's dram shop act which imposes civil liability on vendors for selling liquor to an intoxicated person for injuries "in consequence of such intoxication" [3] to "require proof that the injuries complained of were in consequence of the intoxication of the person to whom the liquor was sold." 129 A.2d at 614. Based on this language, the Connecticut court held that "[t]he statute does not require proof that the sale of intoxicating liquor produced or contributed to the intoxication of the person to whom it was sold." 129 A.2d at 614. The court explained the intent of the legislation as follows:

> [I]nstead of requiring proof that the sale of any particular drink in violation of [law] caused or contributed to the intoxication in consequence of which injury to another person resulted, the legislature reasonably could find that in the great variety of factual situations encompassed by the terms of § [30–102] there would always be such a reasonable relationship between a sale in violation of the law and the injury consequent upon the intoxication of the one to whom the sale was made as would warrant a departure from common-law concepts of proximate causation and the substitution of a new basis of liability.

129 A.2d at 612. In *Kavorkian*, we interpreted the legislature's statement that the "injuries result[ ] from the intoxication of [the purchaser]" to warrant a similar departure from a common law proximate causation analysis.

The court states that nothing in *Kavorkian* says that "the theory of causation must be limited to treating the providee's intoxication as the *only* causal antecedent." *Supra* p. 1321 (emphasis added). I agree.

---

1. *Kavorkian*, 711 P.2d at 523 (emphasis in original). We first suggested that there is an implied cause of action under the statute in *Nazareno v. Urie*, 638 P.2d 671 (Alaska 1981). In *Nazareno*, we rejected the common law rule that a purveyor of alcoholic beverages could not be held liable for injuries or damage caused by an intoxicated customer. At the same time, we noted that "the utility of this common law cause of action is limited to cases arising before the legislature amended AS 04.21.020(a)." 638 P.2d at 675 n. 5. We intended subsequent cases to be analyzed as statutory actions.

2. 783 P.2d at 239–40. We applied this analysis in *Williford v. L.J. Carr Investments*, 783 P.2d 235 (Alaska 1989), where we remanded the case for a determination "whether Tomaganuk's injuries resulted either from his own intoxication or that of his nephew." We included Tomaganuk in the remand instructions because both he and his nephew were drunken persons and the licensee provided both with alcohol.

3. Connecticut's act provides:

> If any person, by himself or his agent, sells any alcoholic liquor to an intoxicated person, and such purchaser, in consequence of such intoxication, thereafter injures the person or property of another, such seller shall pay just damages to the person injured, ... to be recovered in an action under this section.... Conn.Gen.Stat.Ann. § 30–102 (West 1975).

**1324**

However, our holding in *Kavorkian* would make no sense unless the dram shop act was interpreted to require that the purchaser's intoxication is *a* causal antecedent. If AS 04.21.020 is interpreted not to require a showing that the injuries resulted from the intoxication of the purchaser, there is no basis for the conclusion that the statute relieved a plaintiff of his burden of proving that the negligent sale caused or contributed to the intoxication which in turn caused the injuries.

By dismissing our interpretation of AS 04.21.020 in *Kavorkian,* the court denies that the statute requires the plaintiff to prove that the intoxication of the purchaser caused his injuries. Instead, a plaintiff may prove that the negligent provision of alcohol proximately caused the injuries. *Supra* p. 1321. However, the court's holding is of little moment because the common law of proximate causation provides the very same requirement. In determining whether the injuries are proximately caused by the negligent provision, the court must determine whether the injuries fall within the scope of the foreseeable risks of the negligence. The requirement of proximate causation ensures that liability does not extend beyond the risks that make the defendant's conduct negligent in the first place. *See Osborne v. Russell,* 669 P.2d 550, 556–57 (Alaska 1983); Prosser and Keeton, *The Law of Torts,* § 42 at 273 (5th ed.1984) ("scope of liability should ordinarily extend to but not beyond the 'foreseeable risks'—that is, the risks by reason of which the actor's conduct is held to be negligent.").

The dram shop act provides that a vendor is negligent and subject to civil liability for providing liquor to an adult only when the adult is intoxicated. Where an adult purchaser is not intoxicated, the vendor is immune from civil liability. The difference between liability and immunity for providing liquor depends solely on whether the person to whom it was provided was drunk. The risks that make a vendor's provision of

liquor negligent, therefore, are limited by operation of statute to those related to the intoxication of the purchaser.[4] Any other risks of providing alcohol not associated with the intoxication of the purchaser fall outside the scope of the risks that make a vendor's provision of alcohol negligent.

Although the court rules that AS 04.21.020 does not require a plaintiff to prove that his injuries were caused by the intoxication of the purchaser, the common law of proximate causation does. A vendor cannot be held liable for injuries to persons for negligently providing liquor under AS 04.21.020 unless the injuries result from the intoxication of the purchaser. All other injuries fall outside the scope of the risks that make a vendor's conduct negligent under AS 04.21.020.

In this case, it is unclear whether Gonzales' injuries resulted from Gagnon's intoxication because Gagnon was not driving the car when the accident occurred. A reasonable juror may find that Gagnon's intoxication had nothing to do with Krueger's drinking the schnapps and thus nothing to do with the accident. On the other hand, a reasonable juror also could conclude that Gagnon's intoxication was related to the accident because of how it impaired Gagnon's judgment about drinking in a car. Thus, I agree with the court's decision to reverse the superior court's grant of summary judgment to Safeway. However, if at trial, the jury finds that Gonzales' injuries did not result from Gagnon's intoxication, Safeway's sale of liquor to Gagnon is not a proximate cause of the injuries and the court must enter judgment for Safeway.

---

**4.** In *Nazareno, supra* n. 1, we interpreted AS 04.15.020(a) (repealed ch. 131, § 12, SLA 1980) which made it a crime to sell liquor to an intoxicated person as "unquestionably designed ... to protect against personal injuries caused by intoxication." 638 P.2d at 675 (quoting *Vance v. United States,* 355 F.Supp. 756, 759 (D.Alaska 1973)).