David R. GONZALES, Appellant,

v.

SAFEWAY STORES, INC., Appellee.

No. S–5224.

Supreme Court of Alaska.

Oct. 7, 1994.

Murphy L. Clark, Law Offices of Murphy L. Clark, Anchorage, for appellant.

Colleen J. Moore, Phillip J. Eide, Eide & Miller, P.C., Anchorage, for appellee.

Before MOORE, C.J. and RABINOWITZ, MATTHEWS, COMPTON, JJ., and BRYNER, Justice, pro tem.*

## OPINION

MATTHEWS, Justice.

David Gonzales was catastrophically injured in a single-vehicle accident which occurred near Wasilla on August 3, 1986. Gonzales sued Safeway Stores, Inc., claiming that Safeway had negligently and recklessly sold liquor to the other occupants of the vehicle, Steven Krueger and Mike Gagnon, under circumstances in which Safeway's clerks either knew or should have known that Krueger and Gagnon were intoxicated.

After discovery was conducted, Safeway moved for summary judgment. The superior court granted this motion and entered judgment in Safeway's favor. Gonzales appealed. We reversed. *Gonzales v. Krueger*, 799 P.2d 1318 (Alaska 1990) (*Gonzales I*). The following are the facts of the accident as recited in *Gonzales I*.[1]

At about 5:20 p.m. Gagnon entered the Safeway liquor store, selected a quart bottle of schnapps and approached the checkout counter. The clerk, Ramona Van Cleve, was concerned that Gagnon was drunk and told him she would not sell the alcohol to him. Gagnon then said he wasn't driving.

Van Cleve called her supervisor, Connie Schmidt, for advice. Schmidt asked Gagnon if he had been drinking. When he said yes, she said that she was not "allowed to sell liquor to anyone who had been drinking and let them go out and get in a car and drive away." Gagnon repeated that he was not driving and added that his friend would drive. Schmidt then went outside the store as Krueger walked up. Krueger confirmed to Schmidt, and

perhaps to Van Cleve, that Gagnon would not be driving. According to Schmidt, Krueger appeared to be sober. His speech and gait appeared normal and he did not have alcohol on his breath. Schmidt approved the sale of schnapps to Gagnon. Schmidt then watched Gagnon approach the passenger side of the vehicle and Krueger approach the driver side.

Inside the truck Gagnon opened the bottle and shared it with Krueger who was driving. The accident occurred at about 6:00 p.m.

Following the accident, Krueger was taken to the emergency room of Valley Hospital where he reported to a physician that he had six beers on the evening of the accident. A blood alcohol test was taken at 8:30 p.m. which showed that Krueger had a blood alcohol level of 0.16% at the time of the accident. The legal limit is 0.10%. AS 28.35.030(a)(2).

*Id.* at 1319 (footnotes omitted). Gonzales claims that he was asleep in the back seat of the truck cab at the time of the transaction at Safeway and at the time of the accident.

## PROCEDURAL HISTORY

Following the remand of the case to the superior court, Safeway filed a motion for partial summary judgment seeking a ruling that all claims not predicated on the dram shop act be dismissed. This motion was granted. Safeway also moved to exclude any evidence concerning any aspect of Safeway's training programs concerning liquor store clerks. This motion was granted. Gonzales filed a motion for partial summary judgment requesting a declaration that the dram shop act is unconstitutional. This motion was denied.

The trial court appointed a discovery master to make recommendations on discovery disputes and ordered that the party who lost any dispute pay the master's fees. Shortly before trial Gonzales moved to discharge the discovery master; the court denied this motion.

---

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

1. As we noted in the opinion, this account represents that view of the facts which is most favorable to Gonzales.

A jury trial was conducted. At the conclusion of the presentation of the evidence, Gonzales moved for a directed verdict as to Safeway's criminal negligence, and whether Gagnon was an intoxicated person at the time of the sale. The trial court denied these motions.

The jury returned a special verdict, giving a negative answer to the following question: "Did Safeway make a criminally negligent sale of alcoholic beverage to a drunken person on August 3, 1986?" Based on the special verdict, judgment in favor of Safeway was entered. Safeway was awarded costs of $54,663.97 and attorney's fees of $130,622.

Gonzales moved for a new trial and judgment notwithstanding the verdict. These motions were denied. He now appeals. We affirm.

On appeal Gonzales makes numerous claims of error. We find it necessary to discuss five of them.

*DISCUSSION*

A. *Did the trial court err in granting partial summary judgment to Safeway, dismissing all claims not based on the dram shop statute, and excluding evidence that the clerks had not been properly trained?*

We repeat at this point the introduction to the relevant statutes as set forth in our prior opinion in this case:

Under the dram shop statute, a person who provides alcoholic beverages to another person is immune from civil liability for damages caused by the intoxication of that person unless the provider is licensed to dispense such beverages and the person to whom the beverages are provided is a "drunken person."[3] A "drunken person" is a person whose conduct is substantially and visibly impaired as a result of alcohol ingestion.[4]

___

[3] AS 04.21.020 reads in pertinent part:

*Civil liability of persons providing alcoholic beverages.* A person who provides alcoholic beverages to another person may not be held civilly liable for injuries resulting from the intoxication of that person unless the person who

provides the alcoholic beverages holds a license authorized under AS 04.11.080–04.11.220, or is an agent or employee of such a licensee and

. . . .

(2) the alcoholic beverages are provided to a drunken person in violation of AS 04.16.030.

At the time of the accident, AS 04.16.030 read in full:

*Sale or disposition of alcoholic beverages to drunken persons.* A licensee, an agent, or employee may not with criminal negligence

(1) sell, give, or barter alcoholic beverages to a drunken person;

(2) allow another person to sell, give, or barter an alcoholic beverage to a drunken person within licensed premises;

(3) allow a drunken person to enter and remain within licensed premises or to consume an alcoholic beverage within licensed premises;

(4) permit a drunken person to sell or serve alcoholic beverages.

AS 04.21.080(a)(1) defines criminal negligence as follows:

[A] person acts with "criminal negligence" with respect to a result or to a circumstance described by a provision of law defining an offense when the person fails to perceive a substantial and unjustifiable risk that the result will occur or that the circumstances [sic] exists; the risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation.

___

[4] AS 04.21.080(b)(8) provides:

"[D]runken person" means a person whose physical or mental conduct is substantially impaired as a result of the introduction of an alcoholic beverage into the person's body and who exhibits those plain and easily observed or discovered outward manifestations of behavior commonly known to be produced

by the overconsumption of alcoholic beverages.

*Gonzales I*, 799 P.2d at 1319–20 & nn. 3–4.

■ In form, AS 04.21.020 merely expresses a rule of immunity and the conditions under which this immunity does not apply. It does not expressly define the elements of causes of action which may be maintained against a provider of liquor when immunity is not available. However, .020 clearly implies that some causes of action may be maintained. Further, we have construed AS 04.21.020 as impliedly expressing one rule which applies to claims against liquor providers. In *Kavorkian v. Tommy's Elbow Room*, 711 P.2d 521 (Alaska 1985) (*Kavorkian II* ), we held that AS 04.21.020 implied that a licensee who with criminal negligence provides alcoholic beverages to a drunken person could be held liable for damages resulting from the *intoxication* of the drunken person without the "further link that the intoxication be caused by the negligent providing." 711 P.2d at 523. We recognized in *Gonzales I*, however, that the basic function of AS 04.21.020 is to state a rule of immunity and that "traditional principles" of tort law apply when the conditions of immunity are not met. 799 P.2d at 1321, 1322.

■ It follows that the trial court's order granting partial summary judgment dismissing causes of action "for common law negligence, negligent failure to train . . . as well as any other causes of action not predicated on AS 04.21.020" mistook the function of that section. However, under the circumstances of this case this error was harmless. Even though AS 04.21.020 does not define the elements of all viable causes of action against liquor licensees, it does present a bar to all such causes of action based on providing alcoholic beverages if the conditions giving rise to immunity are met. In this case, the

jury's conclusion that Safeway did not with criminal negligence sell to a drunken person means that Safeway was immune under the statute for all unlawful providing claims.

■ Gonzales argues specifically that he has a cause of action under AS 04.21.030. This section provides that a licensee has a duty of reasonable care to observe that its business is lawfully conducted and that the duty includes a duty "to insure that agents or employees comply with the laws concerning the sale of liquor."[2] Gonzales' argument concerning this section lacks merit because, assuming that this section states duties giving rise to tort liability, such liability is nonetheless subject to the rule of immunity expressed in AS 04.21.020 in cases arising out of liquor sales. *Tommy's Elbow Room, Inc. v. Kavorkian*, 727 P.2d 1038, 1045 (Alaska 1986) (*Kavorkian III* ).

■ Gonzales also argues in his opening brief that the training evidence bore on the question of Safeway's criminal negligence because such evidence

> illustrates that Safeway ignored responsible alcoholic beverage sales practices in an effort to increase revenues. Had the plaintiff been allowed to show Safeway's profit motive in selling alcohol to minors as well as intoxicated persons, the jury would have concluded that Safeway acted with criminal negligence when it sold alcohol to Gagnon.

This argument fails for the same reason as Gonzales' argument concerning AS 04.21.030. Although Safeway could be liable for negligent training if it were found not to be immune under AS 04.21.020, the jury found Safeway to be immune, and thus any error in excluding the evidence was harmless.

■ Gonzales' argument may be that Safeway's assumed negligent training should

---

2. AS 04.21.030 provides:

The licensee has a duty to exercise that degree of care that a reasonable person would observe to insure that a business under the person's control is lawfully conducted. This duty of the licensee includes, but is not limited

(1) to insuring the compliance by agents or employees with this title and regulations adopted under this title, including acting with reasonable diligence to determine that agents

or employees are advised of the provisions of this title and the regulations adopted under this title, either by securing the agent's or employee's written acknowledgement of posted instructions or otherwise; and

(2) to insuring the compliance of the premises with public health, fire, and safety codes and ordinances of the state or municipality having jurisdiction.

have been considered by the jury in making the immunity decision. In his reply brief Gonzales argues that evidence of how other retailers train their sales personnel is relevant to the applicable standard of care governing Safeway.[3] While this is true as a matter of general tort law, evidence of industry standard is irrelevant to the statutory immunity decision. Under AS 04.21.020 and the definition of drunken person set forth in AS 04.21.080(b)(8), the focus of the jury's attention in deciding the question of "criminal negligence" is on whether the seller responded as a reasonable person would to the appearance and outward manifestations of behavior of the person to whom the alcoholic beverage was sold, not on any specialized training the seller should have had as an aid to recognizing when a person is intoxicated.

B. *Did the court err in refusing to grant Gonzales' motions for a directed verdict and JNOV regarding whether Gagnon was a drunken person and whether Safeway was criminally negligent?* [4]

▮▮▮ The evidence as to whether Gagnon was a drunken person at the time of the sale was conflicting. Schmidt, the Safeway manager who approved the sale, testified that Gagnon did not have trouble walking, did not slur his speech, did not exhibit unusual behavior, and did not appear generally to be drunk. In addition, a pathologist testified, based on assumptions warranted by the evidence, that Gagnon's blood alcohol level at the time of the sale would have been insufficient to cause him to exhibit common signs of intoxication and that Gagnon would not have fit the statutory definition of a drunken person at that time. Thus, when viewed most favorably to Safeway, the evidence could reasonably support a conclusion that Gagnon was not a drunken person. Since this was so, the trial court properly denied the directed verdict and JNOV motions concerning whether Gagnon was a drunken person.

▮▮ The question of Safeway's "criminal negligence" is dependent on whether Gagnon was a drunken person. Safeway could not have been criminally negligent in the sense called for in AS 04.16.030 unless Gagnon was a drunken person. Since that was a question on which reasonable minds could differ, the court also did not err in denying Gonzales' motions for a directed verdict and JNOV concerning criminal negligence.

C. *Is the dram shop act constitutional?*

Gonzales challenges limited statutory dram shop immunity as contrary to the equal protection and due process clauses of the Fourteenth Amendment of the United States Constitution; the equal rights clause of article I, section 1 of the Alaska Constitution; and article I, section 7 of the Alaska Constitution. His argument is that "the elevated burden of proof required by the dram shop act," the criminal negligence standard, discriminates against those injured by the wrongful sales of liquor licensees, as compared to other tort claimants, and is completely bereft of any rational justification.

The premise of Gonzales' argument is that our statutory system makes maintaining an action against a liquor licensee more difficult than maintaining an action against other tort feasors. The validity of this premise is open to question. In *Williford v. L.J. Carr Investments, Inc.*, 783 P.2d 235, 239 n. 12 (Alaska 1989), we interpreted the requirement of criminal negligence in AS 04.16.030 to be satisfied in a civil case upon proof of a sale by a licensee to an intoxicated person who manifests signs of intoxication. Relying on the legislative history of the dram shop act, we noted that the legislature had defined "criminal negligence" as a "gross deviation" from the standard of care which, in the context of the liquor licensee, exists when the licensee sells to an intoxicated person who exhibits "plain" and "easily seen or discover-

3. We note that Gonzales did not make this argument in the superior court. As an alternative ground for our decision, we consider this point waived. *Evron v. Gilo*, 777 P.2d 182, 186 (Alaska 1989).

4. In reviewing a denial of a motion for directed verdict or a motion for JNOV, we ask whether, viewing the evidence in the light most favorable to the non-moving party, reasonable jurors could differ in their assessment of the particular issue. *Kavorkian v. Tommy's Elbow Room*, 694 P.2d 160, 163 (Alaska 1985).

ed" manifestations of drunkenness. *Id.* However, in *Kavorkian v. Tommy's Elbow Room*, 694 P.2d 160, 167 (Alaska 1985) (*Kavorkian I* ), we held that the trial court did not err in instructing the jury on the definition of criminal negligence as set forth in AS 04.21.080 or in refusing to instruct the jury that selling to a plainly intoxicated person was tortious.[5] Because this case was submitted to the jury under instructions like those which were found not to be error in *Kavorkian I*, we accept the heightened liability standard premise of Gonzales' constitutional argument.[6]

### 1. Equal protection.

■ The constitutional right to equal protection is a command to state and local governments to treat those who are similarly situated alike. The common question in equal protection cases is whether two groups of people who are treated differently are similarly situated and thus entitled to equal treatment. Equal protection jurisprudence concerns itself largely with the reasons for treating one group differently from another. In reviewing equal protection claims we view the enactment in question as creating, by its differential treatment, separate groups. To use an example offered in this case, tort claimants against liquor stores must prove "criminal negligence" in order to recover, whereas tort claimants against medical practitioners need only prove ordinary negligence. Thus liquor store tort claimants are a group separate from medical malpractice tort

claimants because they are treated differently by law. This separation by different legal treatment is referred to as a "classification." We ordinarily review a classification under Alaska's equal rights clause by asking whether a legitimate reason for disparate treatment exists, and, given a legitimate reason, whether the enactment creating the classification bears a fair and substantial relationship to that reason.[7] *State, Dep't of Revenue v. Cosio*, 858 P.2d 621, 629 (Alaska 1993).

■ The challenged classification here is the dram shop act's separation of tort claimants against liquor sellers—such claimants must prove criminal negligence—from tort claimants against other types of defendants who are required merely to prove negligence. This classification then is defined not merely by injured people seeking redress in tort, but by the type of defendant against whom redress is sought. Even though injured claimants as a class may have similar interests, tort defendants cannot be viewed monolithically. The function, utility, needs, and general circumstances of different callings are diverse, and real diversity justifies differential treatment. *Keyes v. Humana Hospital Alaska, Inc.*, 750 P.2d 343, 351–52, 357–58 (Alaska 1988) (statute prescribing special rules governing suits against health care providers held constitutional in view of perceived crisis in malpractice insurance rates, the need to lower the costs and improve the availability of health care, and the need to eliminate frivolous malpractice claims and en-

---

**5.** Our more recent *Williford* decision did not mention this aspect of *Kavorkian I*.

**6.** The validity of the instructions on criminal negligence is not raised on this appeal.

**7.** However, when a classification is based on a suspect factor such as race, the question is much more demanding: is there a "compelling" reason for the classification, and if so, is the enactment narrowly designed to bring about its goal? *State, Dep't of Revenue v. Cosio*, 858 P.2d 621, 626 (Alaska 1993). This is commonly referred to as strict scrutiny. Additionally, under federal equal protection analysis, there are quasi-suspect factors such as gender and illegitimacy where the inquiry is whether the purpose of the enactment is "important" and whether the enactment bears a substantial relationship to the accomplishment of its purpose. *Id.* This is usually referred to as intermediate scrutiny. Under this court's equal

protection analysis we use a "sliding scale" between strict scrutiny and the most tolerant "legitimate reason" test. "As the right asserted becomes 'more fundamental' or the classification scheme employed becomes 'more constitutionally suspect,' the challenged law 'is subjected to more rigorous scrutiny at a more elevated position on our sliding scale.'" *Id.* at 629 (quoting *State v. Ostrosky*, 667 P.2d 1184, 1192–93 (Alaska 1983)). We have, however, in the sixteen years since the sliding scale approach was first formulated in *State v. Erickson*, 574 P.2d 1, 11–12 (Alaska 1978), only identified three stops on the sliding scale—at the relaxed, intermediate, and strict levels of scrutiny. The classification in this case relates merely to economic interests and does not involve suspect or quasi-suspect classifications. We have consistently reviewed challenges to such classifications using the relaxed scrutiny test. *Cosio*, 858 P.2d at 629; *Turner Constr. Co., Inc. v. Scales*, 752 P.2d 467, 470 (Alaska 1988).

courage meritorious ones). Thus, in *Turner Construction Co., Inc. v. Scales*, 752 P.2d 467, 470–72 (Alaska 1988), we analyzed a statute of limitations which benefitted design professionals over other potential defendants in cases arising from defective buildings and found the statute violative of equal protection because it improperly discriminated against defendants who were similarly situated. Directing our attention then to the defendant-defined aspect of the challenged classification in the present case, the following points are evident.

First, at common law a liquor seller was not liable for injuries caused by a drunken person to whom the seller had furnished liquor:

> At common law, a purveyor of alcoholic beverages could not be liable for injuries or damage caused by an intoxicated customer. "The rationale for the common law rule was that the consumption and not the sale of the liquor was the proximate cause of injuries sustained as a result of intoxication."

*Nazareno v. Urie*, 638 P.2d 671, 673 (Alaska 1981) (quoting *Vesely v. Sager*, 5 Cal.3d 153, 95 Cal.Rptr. 623, 627, 486 P.2d 151, 155 (1971) (citations omitted)). Our dram shop act was enacted in 1980, at a time when no decision of this court had disapproved of this rule.[8] Thus, one purpose of the dram shop legislation was to permit liability of liquor licensees where it had not previously existed. A claim that the common law rule of non-liability of liquor dealers violated equal protection guarantees could not easily be made. It follows that a statute changing this rule of non-liability and imposing liability in cases of gross but not ordinary negligence does not run afoul of the constitution. The statute narrows the differences which previously existed.

Second, the defendant class most like liquor sellers is the class encompassing sellers of food and non-intoxicating beverages. This class is liable for selling dangerously defective or adulterated products. W. Prosser, *Law of Torts*, § 99, at 658–662 (4th ed. 1971).

Liquor sellers have the same liability, on the same terms. But the liability involved in the present type of case is different. Liability in the intoxicating liquors setting is based on the consumer's abuse of the product, not on a defect in the product. This liability has no ready comparison with the liability of food or non-intoxicating beverage sellers. Thus no particular reason exists why the same standards for liability imposed on other sellers should be imposed on liquor sellers.

Third, there is a trade-off between criminal negligence—which we assume for purposes of this discussion to be more difficult to prove than ordinary negligence—and cause. Under ordinary principles of causation a plaintiff would have to prove that the liquor unlawfully sold was a substantial contributing factor to the intoxication which caused the accident. *Nazareno*, 638 P.2d at 677. Under the dram shop act the plaintiff has an easier task. The plaintiff must show only an unlawful sale to an intoxicated person who, in consequence of such intoxication, caused injury to another. *Kavorkian II*, 711 P.2d at 523. The plaintiff need not show that the sale substantially contributed to the intoxication.

In our view, each of these points—historic common law immunity, lack of a comparable tort applicable to other defendants, and easing of legal cause requirements—justifies imposing a standard for liability higher than ordinary negligence. We conclude therefore that such a standard does not violate equal protection guarantees.

## 2. Due process.

■ The constitutional requirement of substantive due process acts as a guarantee that legislation be at least minimally rational:

> The constitutional guarantee of substantive due process assures that a legislative body's decision is not arbitrary but instead based on some rational policy. *Concerned Citizens of South Kenai Peninsula v. Kenai Peninsula Borough*, 527 P.2d 447, 452 (Alaska 1974). If any conceivable legiti-

---

**8.** We rejected the old common law rule in *Nazareno*, decided in 1981, and held that "there is a general common law duty, independent of stat- ute, requiring vendors to conduct themselves with reasonable care and prudence when dispensing alcohol." 638 P.2d at 674.

mate public policy for the enactment is either apparent or offered by those defending the enactment, the party challenging it must disprove the factual basis for the justification.

*Keyes v. Humana Hospital Alaska, Inc.,* 750 P.2d 343, 351, 352 (Alaska 1988).

Imposing a heightened liability standard on claims regarding unlawful provision of liquor meets this standard. As Safeway points out, the intoxicated consumer of alcohol can reasonably be regarded as the actor most responsible for the injuries caused in cases of this nature. Adopting that view, requiring particularly egregious conduct by the liquor seller as a prerequisite to finding the seller liable is at least minimally rational. Thus Gonzales' due process claim also fails.

### D. *Was appointment of the discovery master reversible error?*

Because of ongoing discovery disputes, the court on May 25, 1988, entered an order appointing a discovery master. The order required that motions to resolve discovery disputes be heard by the master, who would respond to such motions by making a report with recommended rulings to the trial court. The parties were given ten days after the master's report and recommendation to object to any recommendation of the master. Objections were to be ruled upon by the court. The order provided that the master, a private attorney, would be paid at his regular hourly rate "by the party(s) on the losing side of the master's recommended ruling." Further, "in matters which are 'appealed' to the court, payment shall be by the party(s) losing the 'appeal.'" Payments were to be made within ten days of the due date.

After the master had made a number of rulings, some of them unfavorable to Gonzales, Gonzales on October 25, 1991, filed a motion to discharge the master. The court denied this motion on November 14, 1991. Trial in this case began one week later. The master's total charges to Gonzales were $5,152. Gonzales did not pay these charges. The superior court on June 29, 1992, entered an order to show cause why Gonzales should not be held in contempt for failing to pay them. Apparently the trial court has never issued a follow-up order on the order to show cause, probably because of the intervention of Gonzales' appeal.

Gonzales argues that requiring him to pay the charges of the discovery master infringes upon his access to the court and violates his due process and equal protection rights. He states further that

the work for which the master charged is work normally provided free of charge to all litigants by the court system as a part of the proper operation of the government.... Had the parties wanted to pay for justice, they could have hired a rent-a-judge or agreed to some other form of alternative dispute resolution.

In response Safeway argues, among other things, that Gonzales has made no convincing showing of indigency, noting that he received over $750,000 in prior settlements with other defendants in this case. Safeway also argues that Rule 26(f) permits the appointment of the master, since the rule authorizes the court to call a discovery conference, following which it may enter an order establishing a plan for discovery and "determining such other matters including the allocation of expenses, as are necessary for the proper management of discovery in the action."

Surprisingly, the parties do not mention Civil Rule 53 which authorizes the court to appoint a special master whose compensation "shall be fixed by the court, and shall be charged upon such of the parties or paid out of any fund or subject matter of the action which is in the custody and control of the court, as the court may direct." Civil Rule 53(a) also provides for the enforcement of orders to pay for compensation, stating:

The master shall not retain the master's report as security for his compensation; but when the party ordered to pay the compensation allowed by the court does not pay it after notice and within the time prescribed by the court, the master is entitled to a writ of execution against the delinquent party.

Gonzales has not demonstrated that he objected to the initial appointment of the master in 1988. He did move to discharge the master shortly before trial was to begin,

and that motion was denied only a week before trial. At the time of the court's order, the master's work was substantially completed and, although the court gave no reasons for denying the motion to discharge, the motion could have been denied on timeliness grounds. Because no objection was made to the initial order of appointment, Gonzales has waived his right to challenge the initial order on appeal.[9] The motion to discharge, of course, is properly presented on appeal. However, in view of its timing, denial of the motion was clearly proper.

E. *Attorney's fees and costs.*

[redacted] The court awarded attorney's fees of $130,622 and costs of $54,663.97. The fee award amounted to approximately twenty-five percent of the actual attorney's fees paid by Safeway. These awards are challenged on the ground that Safeway's documentation in support of its claims was inadequate. In *Hayes v. Xerox Corp.* 718 P.2d 929, 939 (Alaska 1986), we held that prevailing parties in cases where there is no money judgment should submit "accurate records of the hours expended and a brief description of the services reflected by those hours." The trial court ruled that Safeway's initial motion for attorney's fees was insufficiently supported under the *Hayes* standard but allowed Safeway to file a supplemental motion with better documentation. Safeway filed a supplemental motion, backed up by 190 pages of original billings from its counsel. The billings were redacted. Because of attorney-client privilege concerns, certain names and subjects were crossed out and thereby made illegible.

Gonzales claims that the court abused its discretion in permitting a supplemental motion for attorney's fees and that, alternatively, the documents submitted in support of the supplemental motion were inadequate because of their redaction.

[redacted] Both claims lack merit. Where a party has failed in the opinion of the court to adequately support its claim, the court has the discretion to allow supplementation or refiling. The redaction of the billings does not materially interfere with an understanding of the services performed sufficient for the purposes of an award of costs and fees.

*CONCLUSION*

The judgment is AFFIRMED.[10]

[redacted]

9. *See Dean v. Firor,* 681 P.2d 321, 326–327 (Alaska 1984) (holding that a party objecting to the propriety of the superior court's reference to a master "should do so prior to or at the time of the reference," or, if such objection is unfeasible, should do so before the judge at the earliest possible opportunity).

10. Gonzales' other points on appeal relate to the amount of compensatory and punitive damages, proximate cause, and the allocation of fault between potentially responsible parties. In view of our decision in this case affirming the verdict of the jury that Safeway did not sell to a drunken person, these issues are moot.